**Entered on Docket**
**April 29, 2026**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: April 29, 2026**



_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 26-30265 HLB |
| | ) |
| ACADEMY OF VOLLEYBALL, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING**

Debtor Academy of Volleyball, Inc. commenced this case on March 26, 2026 (the "Petition Date") by filing a voluntary petition for relief under Subchapter V of Chapter 11.[1]  On April 9, 2026, Debtor filed an Application for Order Authorizing Debtor to Employ General Bankruptcy Counsel.[2]  The Employment Application requests approval of the employment of the Law Offices of Michael Jay Berger ("MJB") as counsel to Debtor.  The Employment Application is supported by the declarations of Michael Jay Berger and Daniele Desiderio.[3]  The latter declarant

---

[1] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code (the "Bankruptcy Code") and all citations to a "Bankruptcy Rule" shall refer to one of the Federal Rules of Bankruptcy Procedure.

[2] Dkt. 32 (the "Employment Application").

[3] Id.

is Debtor's responsible individual,[4] Chief Executive Officer,[5] and part-owner.[6]

The Employment Application was served on all creditors,[7] but the accompanying notice of opportunity for hearing[8] appears to have been served only on parties who would receive a Notice of Electronic Filing through the court's CM/ECF system.[9]  Given Paragraph R of the presiding judge's Practices & Procedures,[10] however, which is consistent with long-standing practice in this district, the Employment Application could have been addressed *ex parte*.  MJB nevertheless chose to give notice to certain creditors and interested parties, none of which has filed a response.

For the reasons that follow, the court is inclined to:  **(1) DENY** the Employment Application; **(2)** suspend all deadlines in the case for 30 days pending Debtor's employment of new counsel; **(3)** order MJB to disgorge to Debtor the remaining balance of its retainer; **and (4)** continue the status conference to **July 9, 2026 at 10:00 a.m.**

---

[4] Dkts. 20, 21, and 28.

[5] Id.

[6] Dkt. 1, p. 39.

[7] Dkts. 33 and 36.

[8] Dkt. 34.

[9] Dkts. 35 and 37.

[10] https://www.canb.uscourts.gov/procedure/salinas-san-francisco/blumenstiel/judge-blumenstiels-practices-and-procedures

### A. Background

Long after close of business on April 1, 2026, MJB filed two motions on Debtor's behalf:  **(1)** a Motion . . . for Order Authorizing Interim Use of Cash Collateral;[11] **and (2)** a Motion for Order Authorizing Payment of Wages and Related Expenses.[12] MJB also filed an *Ex Parte* Motion for Order Shortening Time,[13] which sought an expedited hearing on the First Day Motions.  The *Ex Parte* Motion did not specify when Debtor wanted the court to set the expedited hearing.

MJB did not upload a proposed order on the *Ex Parte* Motion, which meant that it did not come to chambers' attention until the afternoon of April 2.  With no guidance from MJB as to when Debtor needed a hearing, the court issued an Order Shortening Time on April 2, 2026,[14] which set hearings on the First Day Motions for April 7, 2026.  The OST also set forth detailed instructions regarding service and notice of the First Day Motions.

In preparing for the April 7 hearing on the First Day Motions, it became clear to the court that MJB did not comply with the OST.  During the April 7 hearing, MJB admitted that it had not served the OST on anyone, which meant that creditors with an interest in cash collateral had no notice whatsoever of the

---

[11] Dkt. 13 (the "Cash Collateral Motion").

[12] Dkt. 15 (the "Payroll Motion").  The court will collectively refer to the Cash Collateral Motion and the Payroll Motion as the "First Day Motions".

[13] Dkt. 16 (the "*Ex Parte* Motion").

[14] Dkt. 19 (the "OST").

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 3 of 13

April 7 hearing and no notice of the court-ordered deadline for objecting to granting interim relief under the Cash Collateral Motion.

Late in the evening of April 7, MJB filed a certificate of service[15] attesting that the OST and First Day Motions were timely served. A review of that certificate of service demonstrates that **(a)** not all creditors with an interest in cash collateral were served; **(b)** not all served creditors were served at addresses reasonably calculated to provide adequate notice of the First Day Motions and of affected creditors' opportunity to object to the relief sought; **and (c)** the certificate of service, which was due on April 3, 2026 per the OST, was untimely.

The court also noticed serious discrepancies between the creditors identified in the Cash Collateral Motion as having an interest in cash collateral and the creditors included in Debtor's Schedule D,[16] Debtor's List of Creditors Who Have the 20 Largest Unsecured Claims (which included some creditors with partially secured claims),[17] and Exhibit 2 to the Cash Collateral Motion.[18] Creditors included in the List of 20 Largest and Schedule D did not appear in Exhibit 2 to the Cash Collateral Motion; Secured Creditor Expert Funding appears in Exhibit 2 but had received no notice of this case and was not served with the

---

[15] Dkt. 26.

[16] Dkt. 1, pp. 17-23, which is where Debtor must disclose all of its secured debts.

[17] Dkt. 1, pp. 7-9 (the "List of 20 Largest").

[18] Exhibit 2 consists of the result of a UCC search as of March 24, 2026, attached to which are copies of UCC-1s recorded or filed by certain creditors.

Cash Collateral Motion. Creditors with liens that appeared in Exhibit 2 were not included in the Cash Collateral Motion or Schedule D. Quick Funding appeared in the List of 20 Largest, which described it as holding a partially secured claim, but was not mentioned in the Cash Collateral Motion and does not appear in Schedule D. This confusion raised serious due process concerns and strongly suggested that neither Debtor nor MJB had a firm understanding of who Debtor's secured creditors actually were.

During the April 7 hearing, MJB was completely unprepared to answer basic questions about whether Debtor had used cash collateral without creditor consent prior to the hearing, about Debtor's expenses for estimated tax payments and insurance, or about whether Debtor even had adequate insurance.

MJB's serious errors and lack of preparedness meant that the court could grant relief only to the extent necessary to avoid immediate and irreparable harm to Debtor, and had to continue the interim hearing for one week. On April 7, the court prepared and issued an order to that effect.[19] The Apr. 7 Order also provided detailed instructions to MJB explaining how to rectify the service and notice issues it had caused, and instructed MJB to be prepared to discuss certain specific issues at the continued hearing.

With respect to the Payroll Motion, MJB's performance was better, but just barely. MJB's failure to serve the OST presented the same notice issues as those that plagued the Cash

---

[19] Dkt. 25 (the "Apr. 7 Order").

Collateral Motion, but the universe of affected parties was smaller and some – including the United States Trustee and the Subchapter V Trustee – would have received automated notice through the court's CM/ECF system. The court was able to grant interim relief under the Payroll Motion during the April 7 hearing, and instructed MJB to upload a proposed order that included deadlines for serving notice of a final hearing on the Payroll Motion and for filing a certificate of service.

MJB's proposed interim order on the Payroll Motion did not comply with the court's oral instructions, so the court could not enter the order and sent it back to MJB for revision. MJB did not revise and resubmit that order until April 14, 2026,[20] by which time MJB had missed the court-ordered deadlines to serve the interim order on the Payroll Motion and notice of the final hearing on the Payroll Motion, and to file a certificate of service.

The court convened a continued interim hearing on the Cash Collateral Motion on April 16, 2026. In preparing for that hearing, the court again noted that MJB appeared to be abusing the privilege afforded by the court permitting email service because, as to many secured creditors, MJB appeared to be using email addresses directed to "support" or "info". This practice did not appear intended to provide constitutionally sufficient notice, so the court was forced to prohibit MJB from using email service in the future.

[20] Dkt. 41.

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 6 of 13

MJB largely complied with the other requirements set forth in the Apr. 7 Order, but did so in a way that was difficult to follow, and that greatly increased the time it took for the court to confirm compliance.  And while Debtor filed an amended Schedule D,[21] it still took the court *hours* to identify the creditors that have secured claims and to determine the priority of those claims.  This is work MJB should have done – correctly – without prompting and without the court having to expend its scarce resources doing MJB's work.

An even more significant issue that arose prior to the April 16 hearing was Debtor's use of cash collateral without consent from affected creditors or a court order, as required by § 363(c)(2).  In a supplemental declaration from Daniele Desiderio,[22] Debtor admitted that, prior to the April 7 hearing, it had used funds to cover payroll, which was due on April 3.  Those funds constituted cash collateral, and Debtor's use of cash collateral in contravention of § 363(c)(2) might have constituted cause for dismissal, conversion, or removal of Debtor from possession.[23]  While the Desiderio Decl. acknowledged that MJB had instructed Debtor that it could not use cash collateral without creditor consent or a court order, Debtor admitted that it did so anyway, allegedly to avoid harm to its employees.

The court understands Debtor's motivation and its predicament.  While MJB might have provided proper instructions,

---

[21] Dkt. 39.

[22] Dkt. 38 (the "Desiderio Decl.").

[23] §§ 1185 and 1112(b)(4)(D).

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 7 of 13

it gave its client no chance whatsoever to comply with those instructions.

Debtor filed this case on March 26, 2026. MJB then waited 5 calendar days to file the First Day Motions and the *Ex Parte* Motion. MJB neglected to upload a proposed order granting the *Ex Parte* Motion and setting an expedited hearing, which prevented the court from learning of the First Day Motions until the afternoon of April 2. The *Ex Parte* Motion did not explain that Debtor needed truly urgent relief, as it had payroll due on April 3. Without that critical piece of information, and given the amount of time that had passed between the Petition Date and the filing of the First Day Motions, the court inferred that a hearing 2 business days later would suffice.

In short, MJB's failure to promptly file the First Day Motions and the *Ex Parte* Motion, and MJB's failure to clearly explain why and *when* its client needed expedited relief put Debtor in an impossible position and exposed Debtor to significant risk. Rather than protecting its client's interests, MJB put its client directly in harm's way.

**B. Analysis**

Court approval is required before the estate may employ an attorney or other professional.[24] The ultimate determination as to whether employment of an attorney should be approved falls within the sound discretion of the court.[25] "[T]he Court has a duty to deny approval of the employment of counsel by chapter 11

---

[24] § 327(a).

[25] In re Vettori, 217 B.R. 242, 244 (Bankr. N.D. Ill. 1998).

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 8 of 13

debtors-in-possession on grounds of incompetence, among other things.[26]

"In a Chapter 11 case, an attorney can provide competent representation to the estate only if the attorney is thoroughly familiar with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Bankruptcy, and especially Chapter 11 bankruptcy, is a highly specialized area of law.  An attorney for a debtor in possession must have expert knowledge of bankruptcy law in order to achieve a successful result.  Experience indicates that a business that files a Chapter 11 case, by definition is already in trouble . . . Only an attorney with expert knowledge of bankruptcy law can properly aid in the administration of the case."[27]  "One of the most efficient methods for determining whether an attorney has competence to be appointed Chapter 11 counsel is to look at the attorney's performance in previous cases."[28]  "It is entirely proper to consider counsel's performance in previous cases in determining whether his

[26] In re Ricasata, 2010 WL 2891526, *2 (Bankr N.D. Cal. July 16, 2010) (court denied employment application with prejudice based on "obligation . . . to permit a chapter 11 debtor -in-possession only when his counsel of choice is competent in chapter 11 bankruptcy law and has ethical standards sufficient to his role as counsel for a fiduciary"); see also In re Shat, 2009 WL 7809004, *4 (B.A.P. 9th Cir. Nov. 25, 2009) ("The court's second independent ground for denying [counsel's] employment was its concern over [counsel] and his firm's competence.  Although the court believed [counsel] to be a competent attorney, because of his not filing a court-ordered status report in the Shat case, his inability to timely file his employment applications among other things, his staff's inability to ensure that [counsel] receives court orders, and [counsel]'s tendency to blame his staff for case management errors, the court concluded that [counsel] was not competent to represent individuals in chapter 11 cases").

[27] In re Doors and More, Inc., 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).

[28] Vettori, 217 B.R. at 245.

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 9 of 13

appointment in the present case would be in the best interest of the estate and aid in the administration of the case."[29]

The Employment Application touts MJB's experience as counsel to debtors in cases under Chapter 11, and includes a list of approximately 80 Chapter 11 cases in which MJB assisted debtors in confirming plans.  What is missing is how long plan confirmation took, how many tries it took, and whether courts have experienced what this court did:  missed deadlines, unexcused noncompliance with local and federal rules, unexcused failures to comply with court orders, and woeful lack of command of the facts of the given case.  For that kind of evidence, the court need not go far.

In a case pending in this court's Oakland division,[30]  the court declined to approve MJB's employment for many of the same problems that plague this case:  a cash collateral motion that failed to explain who had an interest in cash collateral and what their debts were and a failure to properly request expedited consideration of the cash collateral motion.  This "litany of failures" justified an order denying MJB's employment application.  As the court noted: "[T]his client deserves better."[31]  So does the Academy of Volleyball.

MJB has failed to follow basic, clear service instructions; has failed to show that it understood Debtor's debt structure; has failed to correctly identify the creditors with an interest

---

[29] Doors & More, 126 B.R. at 46 n. 9 (citations omitted).

[30] In re Lamumba, Inc., Ch. 11 Case No. 25-41554 (Bankr. N.D. Cal.).

[31] Case No. 25-41554, Dkt. 27.

in cash collateral; has failed to meet multiple court-ordered deadlines; and has placed Debtor directly in harm's way by failing to prosecute this case diligently and competently. For these reasons, the court is inclined to deny the Employment Application. If the court denies the Employment Application, it is further inclined to order MJB to disgorge to Debtor within 3 business days following entry of an order consistent with this tentative ruling the sum of $19,705.00, which constitutes the unearned portion of its $25,000.00 retainer. The court is further inclined to suspend all court-ordered deadlines in the case, such as the plan filing deadline[32] and all deadlines associated with the status conference statement currently scheduled for May 21, 2026,[33] and the deadline for filing an operating report for March 26-April 30, 2026,[34] while it affords Debtor 30 days to retain new counsel.

To afford Debtor and MJB an opportunity to respond to this Tentative Ruling, the court **ORDERS** as follows:

1.    The status conference currently set for **May 21, 2026** is hereby **CONTINUED** to **July 9, 2026** at **10:00 a.m.**

You may appear at the July 9 continued status conference in-person or by Zoom. If you wish to appear in-person, you should arrive in Courtroom 19 of the United States Bankruptcy Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA no later than 10:00 a.m. If you wish to appear by Zoom, please consult the

---

[32] § 1189(b).

[33] § 1188(c).

[34] B.L.R. 2015-2(b).

Case: 26-30265    Doc# 47    Filed: 04/29/26    Entered: 04/29/26 15:50:20    Page 11 of 13

court's website for information explaining how to arrange an appearance by video. If you have questions about how to participate in a hearing, you may contact the court by calling 888-821-7606 or by using the Live Chat feature on the court's website.

2. The court will convene a hearing on this Tentative Ruling on **May 21, 2026** at **10:00 a.m.** You may appear at the May 21 hearing in-person or by Zoom. Please follow the instructions in Paragraph 1, above.

3. If MJB or Debtor wish to file a response to this Tentative Ruling, they shall do so no later than **May 14, 2026.** No response shall exceed 10 pages. This page limit does not apply to any declaration(s) or request(s) for judicial notice that MJB or Debtor might file in support of their respective responses.

4. If neither MJB nor Debtor timely respond to this Tentative Ruling, the court will deem them unopposed to entry of an order consistent with this Tentative Ruling, will enter such an order, and will vacate the May 21 hearing.

**\*\*END OF ORDER\*\***

Case: 26-30265   Doc# 47   Filed: 04/29/26   Entered: 04/29/26 15:50:20   Page 12 of 13

<u>**Court Service List**</u>