MICHAEL JAY BERGER (State Bar # 100291)
SOFYA DAVTYAN (State Bar # 259544)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:     (310) 271-9805
E-mail: Michael.Berger@bankruptcypower.com
E-mail: Sofya.Davtyan@bankruptcypower.com

*Proposed* Counsel for Debtor and Debtor-in-Possession,
Academy of Volleyball, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Academy of Volleyball, Inc.,<br><br>   Debtor and Debtor-in-Possession. | ) CASE NO.: **26-30265-HLB**<br>)<br>) Chapter 11<br>)<br>) **DEBTOR ACADEMY OF**<br>) **VOLLEYBALL, INC. AND**<br>) **PROPOSED COUNSEL LAW**<br>) **OFFICES OF MICHAEL JAY**<br>) **BERGER'S RESPONSE TO COURT'S**<br>) **TENTATIVE RULING DENYING**<br>) **APPLICATION FOR ORDER**<br>) **AUTHORIZING DEBTOR TO**<br>) **EMPLOY GENERAL BANKRUPTCY**<br>) **COUNSEL AND SETTING HEARING;**<br>) **DECLARATIONS OF MICHAEL JAY**<br>) **BERGER AND DANIELE DESIDERIO**<br>) **IN SUPPORT THEREOF**<br>)<br>) *Hearing on Application:*<br>) DATE: May 21, 2026<br>) TIME:  10:00 a.m.<br>) CTRM: 19<br>) PLACE: 450 Golden Gate Ave., 16th Fl.<br>)    San Francisco, CA |

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

**TO THE HONORABLE HANNAH L. BLUMENSTIEL, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, TO THE UNITED STATES TRUSTEE, SUBCHAPTER V TRUSTEE, SECURED CREDITORS, 20 LARGEST UNSECURED CREDITORS, AND TO ALL INTERESTED PARTIES:**

Academy of Volleyball, Inc. (the "Debtor"), Debtor and Debtor-in-Possession herein, respectfully provides this Response to the Court's Tentative Ruling Denying Application for Order Authorizing Debtor to Employ General Bankruptcy Counsel and Setting Hearing ("Tentative Ruling") [docket no. 47], and in support of its Application for Order Authorizing Debtor to Employ General Bankruptcy Counsel ("Employment Application") [docket no. 32], as follows:

## I.     INTRODUCTION

The problems cited by the Court at the beginning of this bankruptcy case are the exception, not the rule, for the Law Offices of Michael Jay Berger ("Applicant" or "MJB"). Applicant has a well-deserved reputation for excellent work on Chapter 11 matters. Applicant's principal Michael Jay Berger has an "AV Preeminent" rating from Martindale Hubbell and has maintained that rating every year since 1995. Mr. Berger and his partner Sofya Davtyan are both certified specialists in bankruptcy law. Client reviews across the internet show widespread client satisfaction with Applicant's work, including a 4.9 star rating out of 5 stars on Google with 52 reviews, a 5.00 star rating out of 5 stars on Avvo with 90 reviews, and 5.0 star rating out of 5 stars with 103 reviews on lawyers.com, and a 5.0 star rating out of 5 stars on martindale.com with 94 reviews.

In its Tentative Ruling, the Court refers to Applicant's "list of approximately 80 cases in which MJB assisted Debtors in confirming plans," but raised questions about how these cases went, questions which are all answered herein and in the attached Declaration of Michael Jay Berger ("Berger Declaration"). These answers show conclusively that Applicant is well-qualified to represent the Debtor in this Chapter 11

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

case. In fact, the same judge quoted by the Court in the one instance in which Applicant's employment was denied, Judge Lafferty, later not only authorized the employment of Applicant, but confirmed the reorganization plan proposed by Applicant in the case entitled In re Individualized ABA Services for Families, LLC, Case No.: 24-41559 ("In re Individualized"). In re Individualized was filed on October 2, 2024. The In re Individualized reorganization plan was confirmed on August 28, 2025. There were no missed deadlines, no failure to comply with Court Orders, and no noncompliance with federal and local rules.

The problems at the beginning of this case were caused in part by the emergency nature of this Chapter 11 filing. Debtor hired Applicant on March 24, 2026 and filed Chapter 11 on March 26, 2026 to stop an eviction, and to stop liens from aggressive merchant cash advance ("MCA") lenders. At the time of filing, the Debtor had not yet gathered and provided to counsel all of the information needed for the filing of first day motions. This is what led to the 6-day delay between the filing of the Debtor's Chapter 11 Petition on March 26, 2026, and the filing of the Debtor's Cash Collateral Motion and Payroll Motion on April 1, 2026. On or about that time, Applicant reached out to counsel for the U.S. Small Business Administration ("SBA"), the secured creditor with the 1st position lien and interest in cash collateral, to notify the SBA of the hearing and to enter into a stipulation for the use of cash collateral.

## II. STEPS TAKEN TO ENSURE FUTURE COMPLIANCE WITH THIS COURT'S ORDER, FEDERAL AND LOCAL RULES, AND JUDGE BLUMENSTIEL'S PROCEDURES

Applicant has taken this Court's Tentative Ruling extremely seriously, sharing it with his partner Ms. Davtyan and with all of Applicant's employees. Applicant has taken affirmative action to make sure that these types of problems do not happen again. Applicant has carefully reviewed all of Judge Blumenstiel's procedures as set forth at

https://www.canb.uscourts.gov/judge/blumenstiel/procedures, and instructed his partner and all of their employees to do the same. Applicant has carefully reviewed the local rules of the Northern District of California as set forth at https://www.canb.uscourts.gov/procedures/local-rules, and has instructed his partner and all of their employees to do the same. Applicant is familiar with the Federal Rules of Bankruptcy Procedure.

Although Applicant has appeared before most of the Bankruptcy Court Judges in every District of California, this case is Applicant's first case before Judge Blumenstiel. Applicant deeply regrets getting off to a bad start, and wants to change this Court's opinion of him by doing the same excellent work for this Debtor that he has done for so many other Debtors. As this Court is aware, different Bankruptcy Court Judges have different preferences. By way of example, Judge Scott Yun does not want Debtor's counsel to tell his staff what date they want for motions set for hearing on an expedited basis. Judge Yun prefers to pick the date himself. This Court prefers to have Debtor's counsel suggest a date for the hearing, and stated in its Tentative Ruling that the Court received "no guidance from MJB as to when Debtor needed a hearing." If given a chance, the Court will see that Applicant is intelligent and quickly learns from every Court appearance.

The most valuable thing that Applicant has is his reputation. Denial of his employment in this case would be very damaging to Applicant's reputation. If given the chance to continue as Debtor's counsel, Applicant will do everything necessary to ensure future compliance with all Court Orders, Rules, and Procedures. Denial of the Employment Application will also be prejudicial to the Debtor. Applicant has done extensive work in this case, including attending the Initial Debtor Interview with the Debtor, attending the 341(a) meeting of creditors with the Debtor, communicating with the Debtor's landlord, ensuring the Debtor's compliance with requirements under the

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 4 of 61

Bankruptcy Code and the guidelines of the Office of the U.S. Trustee, communicating with the Debtor about potential sale of the company, communicating with the Debtor about potential settlement of the negligence lawsuit against the company, among other necessary work. Denial of the Employment Application would force Debtor to obtain new bankruptcy counsel, who will necessarily not be as familiar as Applicant with Debtor's bankruptcy case, which would be prejudicial to the Debtor.

III. **DEBTOR STILL WANTS THIS COURT TO APPROVE THE EMPLOYMENT OF MJB AS GENERAL BANKRUPTCY COUNSEL FOR THE DEBTOR**

Daniel Desiderio, CEO of the Debtor and the designated responsible individual for the Debtor (see, docket no. 28), still wants the Court to approve the Employment Application and to hire MJB as Debtor's general bankruptcy counsel. Mr. Desiderio testified under oath to his preference at the meeting of creditors after reading the Court's Tentative Ruling, and he repeatedly confirmed his preference in telephone conversations with MJB. See the attached Declaration of Daniel Desiderio ("Desiderio Declaration").

IV. **MJB'S $25,000.00 RETAINER AND HIS HOURLY RATES RANGING FROM $200.00/HOUR TO $695.00/HOUR ARE FAIR, REASONABLE AND ADVANTAGEOUS FOR THIS DEBTOR**

As this Court is aware, there are many firms that would not take on Debtor representation in a Chapter 11 case like the instant case without a retainer of $50,000.00 or more. As set forth in the Employment Application, MJB's hourly rates are reasonable, and compare favorably to law firms with attorneys who are not more qualified than MJB's attorneys, but charge rates of $1,000.00 per hour, or more.

V. **MJB'S EXPERIENCE IN PRIOR CASES JUSTIFIES HIS EMPLOYMENT IN THIS CASE**

In its Tentative Ruling, the Court cites <u>Vettori</u>, 217 B.R. at 245, for the proposition that "One of the most efficient methods for determining whether an attorney has competence to be appointed Chapter 11 counsel is to look at the attorney's performance in previous cases." Applicant completely agrees with this proposition. The Court then discusses Applicant's performance in the one case in which Debtor was not granted authorization to employ Applicant. A closer look at MJB's performance in other Chapter 11 cases, as set forth herein and in the attached Berger Declaration, will give this Court a more complete and accurate picture of MJB's competence and success on behalf of his Chapter 11 Debtor clients. See, the Berger Declaration.

Of particular note are the Chapter 11 cases in which MJB confirmed a plan of reorganization, in which Mark Sharf, the Subchapter V Trustee appointed to this case, also served as the Subchapter V Trustee. Examples of such Chapter 11 cases include:

1. The case entitled <u>In re Camarillo HHCA, Inc.</u>, Case No. 1:24-bk-10677-MB ("In re Camarillo"). In re Camarillo was filed on April 24, 2024, and that Debtor's Amended Plan of Reorganization was confirmed on December 18, 2024 (within 8 months).

2. <u>In re Frinj Coffee</u>, Case No. 9:24-bk-10044-RC ("In re Frinj"). In re Frinj was a difficult case due to difficult-to-settle litigation against that Debtor and its principals, and due to the need for an investor to bring money to the Debtor-company. MJB solved these problems with the help of the In re Frinj Debtor and the help of Subchapter V Trustee Mark Sharf. In re Frinj was filed on January 16, 2024, and that Debtor's Amended Plan of Reorganization was confirmed on January 31, 2025.

3. In re Cenports Commerce, Inc. Case No. 4:23-bk-40478-CN ("In re Cenports") – a Northern District of California Case before Judge Charles Novack. The In

re Cenports case was filed on April 25, 2024, and that Debtor's Amended Plan of Reorganization was confirmed on December 7, 2024 (or 8 months).

4. Vici Wellness, Inc., Case No.: 8:23-bk-10612-TA ("Vici"). The Vici case was filed on March 24, 2023, and that Debtor's Plan was confirmed on August 30, 2023 (approximately 5 months). The plan confirmed was the original plan that Applicant proposed, with no amendments needed.

5. Surrender Solutions, Inc., Case No.: 8:23-bk-10612-TA ("Surrender Solutions"). This Debtor is related to Debtor Vici, described above. The Surrender Solutions case was filed on March 24, 2023, and that Debtor's Plan was confirmed on August 30, 2023 (approximately 5 months). The plan confirmed was the original plan that Applicant proposed, with no amendments needed.

## VI. **CONCLUSION**

MJB has the skill, knowledge, experience, intelligence, qualifications, reputation, and successful track record needed to show that he and his law firm are competent to represent the Debtor as its general bankruptcy counsel in this case. MJB regrets the poor start to this case, and has done his best to explain it and to ensure future compliance by both MJB and the Debtor with all Orders of this Court, Procedures of the Court, and Local and Federal Rules. Both Debtor and MJB ask that the Court consider all the information set forth herein and in the attached Berger Declaration and Desiderio Declaration, and approve MJB as General Bankruptcy Counsel for the Debtor.

///

///

///

///

///

DATED: 5/14/2026

LAW OFFICES OF MICHAEL JAY BERGER

By: _____
Michael Jay Berger
Sofya Davtyan
*Proposed* Counsel for Debtor-in-Possession
Academy of Volleyball, Inc.

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING, DECLARATIONS OF MICHAEL JAY BERGER AND DANIELL DESIDERIO IN SUPPORT THEREOF

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 8 of 61

## **DECLARATION OF MICHAEL JAY BERGER**

I, Michael Jay Berger, declare and state as follows:

1. I am an Attorney at Law, licensed to practice before all of the courts in the State of California, and in all Federal District Bankruptcy Courts in California. I am the sole owner of the Law Offices of Michael Jay Berger ("Applicant").

2. I seek to be employed by Academy of Volleyball, Inc. (the "Debtor"), Debtor and Debtor-in-Possession herein, as its General Bankruptcy Counsel.

3. I have taken this Court's Tentative Ruling extremely seriously, sharing it with my partner Ms. Davtyan and with all of my employees. I have taken affirmative action to make sure that these types of problems do not happen again. I have carefully reviewed all of Judge Blumenstiel's procedures as set forth at https://www.canb.uscourts.gov/judge/blumenstiel/procedures, and instructed my partner and all of our employees to do the same. I have carefully reviewed the local rules of the Northern District of California as set forth at https://www.canb.uscourts.gov/procedures/local-rules, and I have instructed my partner and all of our employees to do the same. I am familiar with the Federal Rules of Bankruptcy Procedure.

4. Although I have appeared before most of the Bankruptcy Court Judges in every District of California, this case is my first case before Judge Blumenstiel. I deeply regret getting off to a bad start, and I want to change this Court's opinion of me by doing the same excellent work for this Debtor that I have done for so many other Debtors. As this Court is aware, different Bankruptcy Court Judges have different preferences. By way of example, Judge Scott Yun does not want Debtor's counsel to tell his staff what date they want for motions set for hearing on an expedited basis. Judge Yun prefers to pick the date himself. This Court prefers to have Debtor's counsel suggest a date for the hearing, and stated in its Tentative Ruling that the Court received "no guidance from

MJB as to when Debtor needed a hearing." If given a chance, the Court will see that I am intelligent and I quickly learn from every Court appearance.

5.    The most valuable thing that I have is my reputation. Denial of my employment in this case would be very damaging to my reputation. If given the chance to continue as Debtor's counsel, I will do everything necessary to ensure future compliance with all Court Orders, Rules, and Procedures. Denial of the Employment Application will also be prejudicial to the Debtor. I have done extensive work in this case, including attending the Initial Debtor Interview with the Debtor, attending the 341(a) meeting of creditors with the Debtor, communicating with the Debtor's landlord, ensuring the Debtor's compliance with requirements under the Bankruptcy Code and the guidelines of the Office of the U.S. Trustee, communicating with the Debtor about potential sale of the company, communicating with the Debtor about potential settlement of the negligence lawsuit against the company, among other necessary work. Denial of the Employment Application would force Debtor to obtain new bankruptcy counsel, who will necessarily not be as familiar as I am with Debtor's bankruptcy case, which would be prejudicial to the Debtor.

6.    Daniel Desiderio, CEO of the Debtor and the designated responsible individual for the Debtor (see, docket no. 28), still wants the Court to approve the Employment Application and to hire me as Debtor's general bankruptcy counsel. Mr. Desiderio testified under oath to his preference at the meeting of creditors after reading the Court's Tentative Ruling, and he repeatedly confirmed his preference in telephone conversations with me.

7.    As this Court is aware, there are many firms that would not take on Debtor representation in a Chapter 11 case like the instant case without a retainer of $50,000.00 or more. As set forth in the Employment Application, my hourly rates are reasonable,

and compare favorably to law firms with attorneys who are not more qualified than myself and my attorneys, but charge rates of $1,000.00 per hour, or more.

8. In its Tentative Ruling, the Court cites Vettori, 217 B.R. at 245, for the proposition that "One of the most efficient methods for determining whether an attorney has competence to be appointed Chapter 11 counsel is to look at the attorney's performance in previous cases." I completely agree with this proposition. The Court then discusses my performance in the one case in which Debtor was not granted authorization to employ me. A closer look at my performance in other Chapter 11 cases, as set forth herein a, will give this Court a more complete and accurate picture of my competence and success on behalf of my Chapter 11 Debtor clients.

9. The Court states in its tentative ruling that "The Employment Application touts MJB's experience as counsel to Debtors in cases under Chapter 11, and includes a list of approximately 80 cases in which MJB assisted Debtors in confirming plans. What is missing is how long plan confirmation took, and whether courts have experienced what this court did: missed deadlines, unexcused noncompliance with local and federal rules, unexcused failures to comply with court orders, and woeful lack of command of the facts of the given case." In none of these approximately 80 cases did the Court have the experience described by this Court. Here is a detailed summary of the actual experience of the Bankruptcy Courts in these cases, presented in reverse chronological order.

a. On March 4, 2026, in the Central District of California, Los Angeles Division, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Sunset Fitness, LLC, a community-based boutique fitness studio in Los Angeles, California. The Case number is 2:25-bk-18336-NB. This case was filed on September 19, 2025. The plan confirmed was the original plan that we proposed, with no amendments needed.

b. Founded in 2018, Sunset Fitness, like many small businesses, faced mounting financial pressure due to high-interest merchant cash advance (MCA) obligations and unsecured

business debt, ultimately making it impossible to sustain ongoing payments. Sofya and I were able to confirm a plan which eliminated approximately $460,000 in unsecured debt by paying 20% to unsecured creditors over 60 months. This is actually higher than our usual 1 to 10 cents on the dollar repayment to unsecured creditors over 5 years on our confirmed Chapter 11 plans, but was necessary due to the success and value of the company. In addition, we restructured certain secured debts to make the monthly payments more manageable, helped our client to successfully assume the commercial lease, completely stopped aggressive MCA collection, and helped the equity holders to retain their full interest in the reorganized company.

c.     On February 10, 2026, my Partner Sofya Davtyan and I confirmed a Subchapter V plan of reorganization for Sanctuaryspa Inc, in the Bankruptcy Court for the Central District of California, Case No: 2:25-bk-14964-BR.  The case was filed on June 12, 2025.  The plan confirmed was the first amended plan. The Debtor was founded in 2011 and operates a beauty spa. It resorted to bankruptcy protection following lease complications, post-COVID revenue decline, and inability to keep up with the payments to its creditors, including credit cards and merchant cash advance lenders. Through the confirmed plan, Sofya and I successfully bifurcated a $153,000 SBA loan into a $54,000 secured obligation to be paid over 60 months, with the remaining balance treated as an unsecured claim which, under the confirmed plan, is receiving an estimated 8.4% distribution over 60 months. General unsecured claims total approximately $1.1 million. We also successfully negotiated an amended lease, rejecting the unfavorable terms. The principal retained her ownership interest and control over the business.

d.     On January 16, 2026, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Sevak Khudanyan in the Central District of California, Case No.: 1:25-bk-11423-VK before the Honorable Victoria Kaufman. This case was filed on August 4, 2025.  The plan confirmed was the original plan that we proposed, with no amendments needed. We filed this case to discharge Mr. Khudanyan's personal guarantee obligations on business debts, and to stop the lawsuits and threats of additional litigation against him from merchant cash advance creditors. Outside of bankruptcy, merchant cash advance lenders can exert considerable

pressure on the personal guarantors of their extremely high-interest rate loans. In this Chapter 11, we discharged $713,510.52 in unsecured debt, including an EIDL SBA Loan, by proposing and confirming a reorganization plan with a 3% distribution to unsecured creditors over 60 months.

e. On January 12, 2026, my Partner Sofya Davtyan and I successfully confirmed a Chapter 11 Plan of Reorganization for BTG Textiles, Inc. in the Central District of California, Case No: 2:25-bk-10548-VZ. This case was filed on January 24, 2025. The plan confirmed was the First Amended Plan of Reorganization. BTG Textiles is an importer and distributor of hospitality and health care textiles serving hotels and healthcare facilities throughout the United States. Prior to bankruptcy, BTG had entered into an asset-based lending agreement with TAB Bank. During the course of the lending relationship, disputes arose between BTG and TAB Bank, forcing BTG to transition into an accounts receivable purchase and security agreement. TAB Bank contacted BTG's customers regarding BTG's business operations, causing significant disruption to BTG's customer relationships and placing substantial pressure on the company's liquidity and operations, ultimately contributing to the Chapter 11 filing. During the Chapter 11 proceeding, Sofya and I negotiated a plan treatment stipulation with TAB Bank resolving TAB Bank's objection to confirmation of Debtor's Plan. We also reached a plan treatment stipulation with Small Business Administration ("SBA") in support of Debtor's Plan. In addition, we obtained authority for BTG to enter into two new lease agreements, negotiated and entered into a stipulation to assume an equipment lease, filed First Day Motions, including cash collateral and payroll motions, and a motion to maintain the prepetition bank account, all of which were approved by the Court. We filed a Motion to Extend the Exclusivity Period, securing additional time for BTG to negotiate and propose its reorganization plan, and successfully opposed motions for relief from the automatic stay.

f. On December 9, 2025, my Partner Sofya Davtyan and I successfully confirmed a consensual Subchapter V Chapter 11 plan of reorganization for J Net Transportation, Inc., an interstate freight carrier operating since 2007. The case was filed in the Bankruptcy Court for the Central District of California, Case No.: 2:25-bk-14752-VZ. This case was filed on June 4, 2025.

The plan confirmed was the original plan that we proposed, with no amendments needed. The filing was necessitated by a substantial post-COVID business decline and an unsustainable commercial lease obligation, following the landlord's issuance of a three-day notice to pay or quit. Despite good-faith pre-petition efforts, the lease dispute could not be resolved outside of bankruptcy. Through the Subchapter V process, Sofya and I negotiated a full lease termination, allowing the Debtor to eliminate a significant ongoing expense and restructure operations. We also negotiated plan treatment permitting payment of post-petition administrative rent expense — otherwise due on the effective date — over a 30-month period. The confirmed plan provides for only a 2% distribution to general unsecured creditors over 60 months, resulting in the discharge of approximately $833,000 in unsecured debt. As a result of the reorganization, the Debtor has stabilized operations, reduced overhead, and is now operating at a profit. This case reflects the effectiveness of Subchapter V as a restructuring tool for small business Debtors.

g. On October 8, 2025, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Vahe Vince Delakyan in the Central District of California, Case No.: 1:25-bk-10761-VK. This case was filed on May 1, 2025. The plan confirmed was the First Amended Plan. The filing of this case primarily arose from Mr. Delakyan's personal guarantees on business debts, along with lawsuits and threats of additional litigation from merchant cash advance creditors. Through the confirmed plan, Sofya and I were able to discharge approximately $1,172,000 in unsecured debt, including an EIDL SBA Loan, by proposing and confirming a 2.7% distribution to creditors over 60 months.

h. On September 30, 2025, my Partner Sofya Davtyan and I confirmed a consensual Chapter 11 Plan of Reorganization for Sample Tile and Stone, Inc. in the Central District of California, Case No: 2:25-bk-10137-BR. The case wase filed on January 8, 2025. The plan confirmed was the Second Amended Chapter 11 Plan. Sample Tile & Stone is a leading tile and stone countertop installation and fabrication contractor with more than 35 years of experience in the commercial and residential construction industry. The company's filing was driven by an economic downturn, rising operational costs, delays in collecting its receivables, and delinquent

contributions owed to the Tile Industry Health and Welfare Trust Fund and associated benefit funds. Sofya and I negotiated a comprehensive stipulation with the Trust Fund to resolve repayment of the priority and secured portions of its claim and obtained the Trust Fund's vote in favor of Debtor's Plan. We were also successful in reaching a plan treatment stipulation with the SBA, reducing its $2 million-dollar EIDL loan to $1 million, thereby resolving the SBA's Section 1111(b) election. Through Debtor's confirmed plan, the unsecured creditor class with claims totaling approximately $1,975,000 is receiving a 3% distribution over 60 months. By filing this Chapter 11 case and negotiating stipulations with key creditors, and substantially reducing our client's obligations, Sofya and I successfully reorganized Sample Tile & Stone, Inc. The company is currently operating without any financial burden and is positioned for future growth and expansion.

i.     On August 28, 2025, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in the Northern District of CA Bankruptcy Court on behalf of Individualized ABA Services for Families, LLC, Case No.: 24-41559. United States Bankruptcy Court Judge William Lafferty was assigned to this case. The case was filed on October 2, 2024. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor was formed in 2020. Since its inception, it has been providing behavioral therapy for children and young adults with autism. At the time of the filing, the Debtor was facing severe financial strain from payments owed to its secured lender, Newtek, several merchant cash advance (MCA) creditors, and business credit cards. Through the Subchapter V process, Sofya and I negotiated a plan treatment stipulation with Newtek with a forbearance agreement protecting Debtor's principal from immediate collection by Newtek, provided the Debtor remains current on payments agreed pursuant to the stipulation. The merchant cash advance issues and the personal guarantee issues in this case are present in many of our Chapter 11 cases. We proposed a 5-year repayment on the priority tax obligations, reclassified the undersecured MCA creditors as unsecured, and proposed and confirmed a 4% distribution to general unsecured creditors over 60 months. There is no other way to make such an excellent arrangement with

merchant cash advance creditors. This confirmed plan ensured financial stability for the Debtor, while allowing it to continue its business operations helping children and young adults.

j. On July 1, 2025, my Partner Sofya Davtyan and I confirmed a consensual Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Right Size Plumbing & Drain Co. Inc., Case No.: 1:24-bk-11886-VK. The case was filed on November 11, 2024. The plan confirmed was the original plan that we proposed, with no amendments needed. Right Size Plumbing & Drain Co. Inc. provides plumbing, drain and sewer services, as well as water damage restoration services. The chapter 11 bankruptcy case for Right Size Plumbing was commenced on November 11, 2024. At the time of the filing, Debtor had 13 secured creditors with an estimated total liability of $2,342,000, which included a U.S. Small Business Administration EIDL Loan for $2,104,042.67 and 12 creditors secured by Debtor's vans and equipment. Debtor also had an estimated $414,000 in general unsecured debt. Through strategic use of the Subchapter V process, Sofya and I achieved a highly successful reorganization for Right Size Plumbing. We negotiated a plan treatment stipulation with the SBA, resolving its 1111(b)(2) election by reducing the secured portion of the loan from $2.1 million to $450,000, and re-amortizing the payments over a 30-year term. This significantly lowered the Debtor's monthly obligation to the SBA. We successfully resolved several Relief from Stay Motions, thereby allowing Debtor to retain and continue using these assets for its operation. We put together a plan of reorganization which provided for a 3% pro rata distribution to general unsecured creditors over 60 months, effectively discharging over $2.3 million in unsecured debt, including the undersecured and bifurcated portion of SBA's EIDL loan. The plan was confirmed consensually, meaning that no creditor opposed confirmation. Under Subchapter V, this resulted in an immediate discharge upon confirmation. As a result of our efforts and great results, Right Size Plumbing now operates with greatly reduced, restructured obligations, improved cash flow, and renewed stability.

k. On March 10, 2025, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Henry Ku in the Central District of California, Case No.: 2:24-bk-14842-WB.

Case: 26-30265   Doc# 52   Filed: 05/14/26   Entered: 05/14/26 20:23:58   Page 16 of 61

The case was filed on June 19, 2024. The plan confirmed was the original plan that we proposed, with no amendments needed. Mr. Ku, whose primary asset is his principal residence, had three secured obligations against his home at the time of filing for bankruptcy on June 19, 2024. The first mortgage holder is Shellpoint, and Debtor had fallen behind while applying for a loan modification. The second mortgage holder is Real Time Resolution, and the property was in foreclosure due to missed payments. The third trust deed holder is GBC International Bank with a $2.5 Million lien, arising from a business the Debtor had in 2008. At the request of Henry Ku, we disputed the validity of GBC's lien and the underlying claims. Sofya and I negotiated a plan treatment stipulation with Shellpoint, allowing the Debtor to catch up on both pre-petition and post-petition arrears over 36 months. We secured a favorable plan treatment stipulation with Real Time Resolution, reducing the principal balance from $165,338.34 to $140,926.06, extending the repayment term for 10 years, and eliminating $28,155.14 of past due interest. We filed a motion to value the Debtor's property and, through the Plan of Reorganization, we completely removed GBC's $2.5 million third trust deed – a huge success and financial relief for our client! Mr. Ku successfully discharged his general unsecured debt by proposing a 5% pro-rata distribution.

I. On March 5, 2025, my Partner Sofya Davtyan and I successfully confirmed a Subchapter V Plan of Reorganization for our client, Meghan, Inc. in the Central District of California, Case No. 2:24-bk-17161-NB. The case was filed on September 3, 2024. The plan confirmed was the original plan that we proposed, with no amendments needed. Meghan, Inc. designs, manufactures, and sells clothing, accessories, and handbags through its own website and also distributes to major retailers including Nordstrom, Macy's, Saks Fifth Avenue, and Kohls. Through the Subchapter V process, Sofya and I achieved great results for our client. We eliminated approximately $515,000 in merchant cash advance (MCA) loans, restructured obligations to PayPal, Shopify, and the SBA, allowed for repayment of priority tax claims over 5-year plan, and discharged over $1.8 million in general unsecured debt by confirming a plan with 3% pro rata distribution over five years. The Chapter 11 filing provided Meghan, Inc. with

relief from high-interest MCA loans and helped the company emerge stronger and fully reorganized.

m. On February 4, 2025, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Archive IT!, Case No.: 2:24-bk-16240-NB. This case was filed on August 5, 2024. The plan confirmed was the original plan that we proposed, with no amendments needed. Archive IT! specializes in digital archiving of records. When the interest rates and labor costs increased during the recent years, the Debtor took an EIDL loan to help the business stay afloat, but was still not able to keep up with the payments to its creditors and also defaulted on the rent, thus necessitating the need for a chapter 11 reorganization. Archive IT! had $1,050,330.80 in debt, which included a $536,321.78 U.S. Small Business Administration (the "SBA") secured claim. Through the reorganization plan, Sofya and I bifurcated the SBA's claim into a $81,770.00 secured claim and a $454,551.78 general unsecured claim. The SBA's secured claim is being paid in full at $416.25 monthly amortized payments over 305 months. The total amount owed to general unsecured creditors is $894,097.62. The holders of unsecured claims, including the $454,551.78 general unsecured portion of the SBA's claim, are receiving a 4% pro-rata distribution over 60 months. The plan also cures the priority tax obligations owed to Franchise Tax Board and Los Angeles County Treasurer within 5 years from the petition date. This chapter 11 bankruptcy eliminated approximately $900,000 in debt by paying a 4% distribution over 5 years. This is a tremendous savings for the Debtor! Archive IT! is now able to focus on its business and work on expanding its operations.

n. On January 31, 2025, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan for Frinj Coffee, Incorporated ("Frinj"), Case No: 9:24-bk-10044-RC. This case was filed on January 16, 2024. The plan confirmed was the first amended plan. Frinj works with more than 65 California farmers who grow high-quality coffee in California. Frinj processes and distributes this coffee. The bankruptcy petition was filed primarily to address ongoing litigation with a shareholder and former employee, Paige Gesualdo. Ms. Gesualdo's multi-million-dollar

18

claim included 20 different causes of action against the Debtor, including fraud claims, labor law claims, and breach of contract claims. Through the Chapter 11 process, Sofya and I were able to reach a very favorable settlement with Ms. Gesualdo and her father, Ralph Gesualdo, following a productive mediation session with a retired judge from ADR services. This strategic approach provided Frinj with the necessary time to secure an investor, gain the support of impaired classes, and confirm its plan on a consensual basis under 11 U.S.C. Section 1191(a). We were able to get Frinj's insurance company to pay most of the settlement amount, and get a complete release for the owners of Frinj, who had been named as additional defendants in the Paige Gesualdo lawsuit. This successful reorganization allowed Frinj to favorably resolve multi-million-dollar litigation against it and secure an investor to support the company's long-term growth and financial stability. By leveraging the benefits of Chapter 11, Frinj not only overcame a significant legal and financial challenge, but also positioned itself for a financially stronger future. This case was not an easy one. At one point, Judge Ronald Clifford was thinking about dismissing the case, as he did not think that we could confirm a plan of reorganization. I told him about the many reorganization plans that I had confirmed in other Chapter 11 cases, and effectively pleaded the Debtor's case. He allowed the case to continue. On January 15, 2025, that day of the plan confirmation hearing, Judge Clifford said something about me that I will never forget: "He is never going to let me forget that he confirmed this reorganization plan. He's going to put it on his business cards."

o.  On December 18, 2024, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Camarillo HHCA, Inc., Case No.: 1:24-bk-10677-MB. The case was filed on April 24, 2024. The plan confirmed was the first amended plan. Camarillo HHCA, Inc. ("Camarillo") has been in the business since 2015 and provides home health care services. Pre-petition, Camarillo faced significant financial hardship due to its non-payment of a Small Business Administration (SBA) loan. After Camarillo fell behind on the payments on its SBA loan, the loan was referred to the U.S. Treasury for collection, resulting in the addition of 40% penalties and fees. As part of its efforts to collect, the

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

U.S. Treasury intercepted Camarillo's Medicare receivables, placing critical cash flow at risk and jeopardizing the company's ability to continue to operate. By filing the chapter 11 bankruptcy case, we got the loan file returned from the Treasury to the SBA, and got the 40% penalties and fees waived. We were also successful in getting Medicare to release withheld payments, restoring Debtor's cash flow. The SBA issued a refund for payments received by the Treasury post-petition. We entered into a stipulation with the SBA for monthly repayment of the debt through its 2050 maturity date. Camarillo has $19,850.48 in priority tax obligations and $58,543.75 in general unsecured debt. Through our Subchapter V Reorganization Plan, the Debtor is paying the priority taxes and its unsecured debt in monthly installments over 5 years. The owners of Camarillo kept their equity interests in the company without making any additional equity contribution to the company.

p. On November 14, 2024, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Briganti Enterprise, Inc., Case No.: 2:24-bk-12006-NB. The case was filed on March 15, 2024. The plan confirmed was the first amended plan. Briganti was formed in 2012 and is in the business of selling mattresses, pillows, boxsprings and foundations, adjustable bases, mattress protectors, sheets and bedding, frames, and candles. With inflation and increased labor costs, Briganti's revenue decreased, leading Briganti to take several high-interest rate merchant cash advance loans to stay afloat. As is often the case with our Chapter 11 clients, the merchant cash advance loans soon become a serious problem for the Debtor. Unable to keep up with the payments required by their lenders and their landlords, the Debtor called us. At the time of the bankruptcy filing, Briganti was operating three different mattress stores, one in Los Angeles, one in Burbank, and one in Culver City. At the time of the Chapter 11 filing, Briganti had $171,649.00 in assets and $1,318,798 in debt, which included an estimated $500,000 U.S. Small Business Administration (the "SBA") secured claim. Through the reorganization plan, Sofya and I bifurcated SBA's claim into a $177,724.00 secured claim and a $343,955.63 general unsecured claim. The SBA's secured claim is being paid in full at $566.00 per month amortized payments until September 10, 2050 maturity date. The

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

$343,956.63 general unsecured portion of the SBA's claim is receiving a 5% pro-rata distribution (5 cents on the dollar), along with other unsecured creditors, over 60 months. The total amount owed to general unsecured creditors is $1,053,185.50 and the holders of allowed unsecured claims are receiving a 5% pro-rata distribution over 60 months. The plan cures the priority tax obligations owed to Franchise Tax Board, the Internal Revenue Service, and California Department of Tax and Fee Administration within 5 years from the petition date. As part of the reorganization plan, Briganti vacated the Burbank location upon expiration of the lease, entered into a stipulation for rejection of the Culver City lease, and now is operating only the Los Angeles store. The ability to assume or reject leases is another outstanding feature of Chapter 11 bankruptcy. By filing the chapter 11 bankruptcy, Briganti was able to avoid lawsuits, enter into a 5-year repayment plan with taxing authorities, reject the lease for its not profitable store, substantially reduce the SBA's secured obligation, cram down all other undersecured merchant loans, and confirm a 5% repayment plan to its creditors by paying $877.59 per month.

q.      On October 17, 2024, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Polerax USA Inc., Case No.: 2:24-bk-12938-NB. The case was filed on April 16, 2024. The plan confirmed was Debtor's first amended plan. Polerax was formed in 2016 and operates an embroidery company. During the Covid pandemic, Polerax's largest customers stopped placing orders, which greatly affected its revenue. When the Covid-imposed restrictions started to go away, the Debtor's high margin work had already stopped and it was difficult for it to recover the lost revenue. To ensure that the operation would remain uninterrupted, Polerax took several merchant cash advance loans, but eventually was not able to keep up with the monthly payments. This resulted in lawsuits filed against Polerax by Spartan Capital and Webfunder. Polerax also fell behind on rent payments to its landlord for an estimated $118,000.00. The merchant cash advance loans, lawsuit and delinquent rent were all factors contributing to the decision by Polerax to file Chapter 11. At the time of the filing, Polerax had $99,458.00 in assets and $3,368,075.00 in debt, which included a $2,183,107.00 U.S. Small Business Administration (the "SBA") secured claim. Through the

reorganization plan, Sofya and I bifurcated SBA's claim into a $122,455.00 secured claim and a $2,060,632.87 general unsecured claim. The SBA's secured claim is being paid in full at $617.34 per month amortized payments until June 10, 2050 maturity date. The $2,060,632.87 general unsecured portion of the SBA's claim is receiving a 2% pro-rata distribution (2 cents on the dollar), along with the other unsecured creditors, over 60 months. The plan cures the priority tax obligations owed to Franchise Tax Board and the Internal Revenue Service within 5 years from the petition date and includes a Stipulation with the Landlord for rejection of the lease. By filing the chapter 11 bankruptcy with my firm, Polerax was able to save its business, avoid lawsuits, judgments and collections, resolve its tax obligations, reject its lease, substantially reduce the SBA's and other secured claims, and confirm a 2% repayment plan to its creditors.

r. On September 9, 2024, my Partner Sofya Davtyan and I confirmed a plan of reorganization for <u>Zoheir Abdallah Maarouf</u> in the Central District of California, Case No. 1:22-bk-10466-MB. The case was filed on April 14, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. I substituted in as counsel for the Debtor 3 months after the case was filed by another attorney. The case involved a shopping center that was in foreclosure, with a receiver appointed. The major issue was litigation with the prior owners of the shopping center regarding Debtor's failure to make payments per the terms of a promissory note and the prior owners' alleged failure to disclose environmental issues affecting the shopping center. Debtor employed my girlfriend, CPA Jennifer Liu, to catch up on delinquent Monthly Operating Reports and then to keep current with filing these reports. This was crucial to the success of this case. Sofya and I successfully opposed creditor's Motion for Order Dismissing Bankruptcy Case and Motion for Relief from Stay. We successfully moved to assume certain leases and successfully moved for an Order Authorizing Post-Petition Financing for the Debtor. With the help of Special Litigation Counsel, we settled the Debtor's dispute with the former owners of the shopping center and got Court approval for the proposed settlement agreement. This resolved the pending litigation between the parties and facilitated the confirmation of a plan of reorganization for the Debtor.

s.     On August 13, 2024, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Energy Plus Solar, Inc. (the Debtor) in the Central District of California, Bankruptcy Case No.: 2:23-bk-12863-NB. The case was filed on May 9, 2023. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor specializes in solar panel installation. This case was highly contested by judgment creditor Diane L. Klausen and her counsel Roger E. Naghash. From the inception of the case, Creditor Klausen and Attorney Naghash filed objections and oppositions to almost every Motion, Application Notice and Report filed by the Debtor. Again and again, we defeated this creditor and her counsel Roger E. Naghash, but they kept on filing objections and oppositions that Judge Bason later determined to be frivolous and brought in bad faith. Klausen and Naghash objected to insider compensation and lost. Klausen and Naghash objected to the Debtor's Application to employ Law Offices of Michael Jay Berger as General Counsel for the Debtor and lost. They moved to Remove Debtor, Appoint a Trustee, and a Creditor's Committee and lost. They opposed Debtor's budget motion and lost. They filed an adversary proceeding against the Debtor, its owner and his wife, and lost. Sofya and I successfully moved to have the case dismissed with prejudice by our filing a Rule 12(b)(6) Motion for Failure to State a Claim for Relief. Klausen and Naghash opposed Debtor's Application to Employ a CPA and lost. They objected to my Fee Applications and lost. They filed improper objections to the Court's Orders and Debtor's Monthly Operating Reports. They filed a Motion to Dismiss Case or Convert to Chapter 7 and lost. They filed a Motion to Stay Entire Action and lost. They filed a Motion to Recuse Judge Bason and lost. They filed a Motion to be Awarded Attorney's Fees and Expenses and lost. Sofya and I filed two Sanctions Motions against Creditor Klausen and Attorney Naghash and obtained orders from the Bankruptcy Court jointly and severally against Creditor Klausen and Attorney Naghash for a total sum of $66,042.92 ($53,646.84 in connection with the 1st Sanctions Motion and $12,396.08 in connection with the 2nd Sanctions Motion, consisting of $7,396.08 in fees and $5,000.00 for punitive sanctions) and a separate order for attorney's fees against Creditor Klausen in the amount of $21,871.50 as my client was the prevailing party in the

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 23 of 61

Adversary Proceeding case that Klausen and Naghash filed. This is how we deal with unreasonable attorneys and their clients. If Klausen and her attorney Naghash had done nothing at all but file an accurate Proof of Claim, her claim would have been paid in full. Instead, their bad faith actions led to them both being severely sanctioned by the Court and her claim being reduced from her claimed $190,393.22 to $54,847.62. We did not abandon our client when faced with a difficult creditor and her difficult counsel. We fought and won for our client. This was another successful reorganization for another solar energy company, with a great outcome for the Debtor.

t. On July 15, 2024, Sofya Davtyan and I confirmed a Chapter 11 Liquidating Plan for INDIEV, Inc. in the Central District of California, Case No.: 8:23-bk-12036-SC. This case was filed on October 2, 2023. The plan confirmed was Debtor's first amended plan. INDIEV was formed in 2017 and was a Chinese-owned start up in the business of manufacturing electric vehicles. The events that led to the filing of the Chapter 11 were the pending eviction of the Debtor from its manufacturing facility and the breach of promissory note and guaranty lawsuits against the Debtor caused by Debtor's inability to pay its creditors. Judge Clarkson was initially skeptical of our ability to confirm a plan of reorganization in this case. During the bankruptcy, Sofya and I successfully opposed the United States Trustee's Motion to Dismiss or Convert the Case to Chapter 7, successfully opposed Toyota's Motion for Extension of Time to File a Complaint Objecting to Debtor's Discharge, and successfully opposed the landlord WLM Showcase's Motion for Relief From the Automatic Stay (the motion was continued and denied without prejudice for improper service which gave Debtor the time needed to liquidate the assets stored at the warehouse). We employed an auctioneer and obtained an order from the Bankruptcy Court approving the sale of Debtor's assets, which generated sufficient funds to pay the administrative rent and other administrative claims in full, pay the priority unsecured claims in full, and provide a 1% distribution to general unsecured creditors on claims totaling $16,970,317.78.

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 24 of 61

u.      On June 21, 2024, Sofya Davtyan and I confirmed a Plan of Reorganization for D'RIA Group, Inc., in the Central District of California. Case No.: 1:23-bk-11148-VK. The case was filed on August 14, 2023. The plan confirmed was Debtor's first amended plan.  The Debtor is in the business of selling engineered quartz slabs. These slabs are made up of 90 to 95 percent ground quartz, mixed with 5 to 10 percent polyester resin and polymers as a binder, with pigments added for color. These slabs are cut and then used for countertops. The event that triggered the filing of Debtor's bankruptcy was the filing and serving of 24 lawsuits against the Debtor and multiple other defendants for toxic injuries, with dozens more lawsuits being threatened. In each case, the Plaintiffs claimed that they suffered from silicosis, a disease that can be caused by cutting engineered quartz stone slabs without taking proper precautions. Many of these cases were wrongful death cases. All were filed on behalf of stone cutters, and all were filed by the same two law firms working together, Metzger Law Group, APLC, and Brayton Purcell LLP. After extensive negotiations with claimants' counsel, we reached an agreement that allows claimants to pursue recovery only against any available insurance. The Court Order granting these Plaintiffs relief from stay specifically included this limitation. All of the claimants withdrew their proof of claim from the Debtor's Bankruptcy Case. All of the claimants received nothing under Debtor's reorganization plan. The remaining creditors, a $28,895.92 tax claim from the CDTFA and $35,810.08 in general unsecured claims, all supported Debtor's reorganization plan as it paid them 100% in one installment on the effective date of the plan. This enabled Sofya and I to confirm a consensual plan pursuant to 11 U.S.C. Section 1191, which resulted in the entry of the discharge upon plan confirmation.

v.      On June 20, 2024, my Partner Sofya Davtyan and I confirmed a consensual Subchapter V Reorganization Plan for James and Jan LLC, in the Central District of California, Case No.: 2:23-bk-10155-BR. The case was filed on January 11,2023.  The plan confirmed was Debtor's first amended plan.   The Debtor is engaged in real estate investment. The filing was precipitated by a scheduled foreclosure sale of the Debtor's real property on Mulholland Drive in Los Angeles, California. During the first 11 months of the Chapter 11 Case, our client made no

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

mortgage payments to its secured lender, despite the fact that the property had no equity and was not listed for sale. In the 12th month, the Court approved a plan treatment stipulation that we reached with the foreclosing secured creditor, reducing the secured obligation from $4,491,167.58 to $3,800,000.00, re-amortizing the loan over 40 years at a 4.5% fixed interest rate, and discharging $691,167.58 in debt. The plan that we confirmed pays unsecured creditors one penny on the dollar, over 5 years, with a total monthly payment for the Debtor of $31.37.

w. On January 26, 2024, Sofya Davtyan and I confirmed a plan of reorganization for jointly administered Subchapter V Debtors, Phenomenon Marketing & Entertainment, LLC and Phe.no, LLC in the United States Bankruptcy Court, Central District of California, Bankruptcy Case Nos.: 2:22-bk-10132-BB and 2:22-bk-10715-BB. Both cases were filed on January 10, 2022. The joint plan confirmed was Debtor's first amended plan. The Debtor Phenomenon Marketing & Entertainment, LLC is in the business of advertising and marketing. Joint Debtor, Phe.no, LLC is the sole member of the Debtor. Problems caused by Covid-19, Debtor's reputation from previous management and Debtor's unsuccessful negotiations with its landlord were the driving factors for Debtor's financial problems and precipitated the bankruptcy filing. Immediately after the filing of the bankruptcy case, Sofya and I moved to reject the Debtor's lease to prevent the Debtor from incurring post-petition administrative rent expense for the duration of the case. We obtained an order from the Court approving a $1 Million post-petition financing to assist the Debtor with covering its operating expenses while it was navigating through the reorganization process. This case included a fight that we ultimately won regarding the Debtor's eligibility to be a Subchapter V Debtor. Judge Ernest M. Robles issuing a Memorandum of Decision on April 28, 2022 sustaining the landlord's objection to the Debtor's eligibility to proceed under Subchapter V of Chapter 11, but then, on August 1, 2023, Judge Robles granted our Motion to Reinstate Debtor's Status as a Subchapter V Debtor. This proved critical to the success of the case as we were able to confirm the reorganization plan without any creditor votes approving the plan. On September 15, 2023, the cases were reassigned to Judge Sheri Bluebond. We helped the Debtor settle all of its disputes with its largest creditors. At the

time of the filing, Debtors had $922,311.62 in secured debt and $11,386,588.19 in scheduled general unsecured debt, which consisted of delinquent rent, business loans, pending lawsuits, and legal fees. We proposed and confirmed a 5-year plan that pays the secured creditors over 5 years, reduced the general unsecured obligations from $11,386,588.19 to $2,908,679.18 and pays a 3% distribution to the general unsecured creditors over a 60-month period. The chapter 11 filing gave Debtors the ability to successfully restructure their business, reduce the overhead expenses and debts, and resolve all of their pending disputes.

x. On January 23, 2024, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for DVD Factory, Inc., Case No.: 2:23-bk-11085-DS in the United States Bankruptcy Court, Central District of California. The case was filed on February 27, 2023. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor manufactures adult DVDs. It is the only remaining business in America that does this. The events that caused the filing of the case included a breach of contract judgment and a labor law class action lawsuit. The case was highly contested by three unsecured creditors. They filed objections to claims, a motion to remove the Debtor from possession, and objections to Debtor's plan. Judge Saltzman held an evidentiary hearing on the feasibility of the Debtor's proposed plan, and we prevailed for our client, aided by the testimony of DVD Factory, Inc.'s owner, Daniel J. Quinn. We confirmed Debtor's plan of reorganization over the objections of these creditors. Debtor's plan proposes a 5-year repayment plan to holders of allowed claims, without interest, while offering 0% distribution to the claimants of the labor law class action, whose claim was disallowed.

y. On December 7, 2023, Sofya Davtyan and I confirmed a consensual plan of reorganization for Subchapter V Debtor Cenports Commerce Inc. in the Northern District of California, Bankruptcy Case No.: 23-bk-40478-CN. The case was filed on April 25, 2023. The plan confirmed was Debtor's first amended plan. The Debtor is a B2B drop shipping (virtual distribution) company that helps brands sell products online to Home Depot, Lowes, and other companies under their own accounts. At the time of the filing, Cenports had $1,989,813.00 in

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

scheduled secured debt and $5,057,890.00 in scheduled general unsecured debt, which consisted of trade debt, credit cards, merchant cash advance loans, vendors, and pending lawsuits. Sofya and I were able to reach plan treatment stipulations with Debtor's creditors, including the Small Business Administration (SBA) and ARC Technology. We proposed and confirmed a 5-year plan that reduced the secured debt from $1,989,813.00 to $272,707.00 to be paid over 5 years and treated the balance of the undersecured obligations, consisting mostly of merchant cash advance loans secured by UCC-1 Financing Statements, as general unsecured claims. The plan pays 1% of $6,211,806.26 total general unsecured claims at $1,035.30 per month for 60 months. The chapter 11 filing gave Debtor the ability to successfully restructure its business model, reduce its overhead expenses and debts, favorably resolve claims, and generate the income needed to support the payments proposed under the plan. The Debtor's principal is very happy with the results. Sofya and I take pride in helping small and medium size businesses reorganize and greatly reduce their debts. Chapter 11 can be an excellent tool for dealing with onerous merchant cash advance loans. We can help you reorganize your business as well. For more information and to schedule a free consultation, please contact our office.

z.      On October 25, 2023, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for <u>Robert Lee Alderman and Noni Elizabeth Alderman</u>, Case No.: 1:22-bk-11170-VK. The case was filed on October 5, 2022.   The plan confirmed was the original plan that we proposed, with no amendments needed. At the time of the filing, the Debtors owned two rental properties (Brunswick and Valley View rental properties) and their principal residence. The bankruptcy was filed to stop the pending foreclosure sale for the Brunswick rental. The lenders for the Brunswick rental and the principal residence both filed motions for relief from the automatic stay to foreclose on the properties. Sofya and I negotiated plan treatment stipulations with these lenders, which resolved the relief from stay motions, modified Debtor's loans and provided for cure of the pre-petition arrears over time. We also successfully filed a sale motion for the Valley View rental.

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

aa.    On August 30, 2023, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for <u>Vici Wellness, Inc.</u>, Case No.: 8:23-bk-10612-TA in the United States Bankruptcy Court, Central District of California, Santa Ana Division. The case was filed on March 24, 2023. The plan confirmed was the original plan that we proposed, with no amendments needed. Vici Wellness, Inc. is in the business of selling wellness products on its website, including wellness patches, oils, lotions, candles, matches, sleep masks, and other similar products.  The Debtor obtained a number of hard money loans guaranteed by its principals, but due to high payments, was not able to keep up with the monthly obligations.  This was the main reason for the bankruptcy filing.  To solve this problem, we entered into plan treatment stipulations with American Express, On Deck Capital, and The Business Backer for repayment of the loans over 60 months at no interest with an agreement that these creditors will not pursue any action against the guarantors during the 60-month repayment term.  The principals of the Debtor retained their interests in the Debtor. The Debtor is now financially stable and is able to afford the greatly reduced payments proposed under the Plan.  Vici's plan was confirmed as a consensual plan pursuant to 11 U.S.C. Section 1191(a).  In a consensual plan, the Subchapter V Trustee's services are terminated upon substantial consummation of the plan.  This is commonly interpreted to mean that the Subchapter V Trustee's services end when payments to creditors begin.  This saves money for the Debtor.  Our total legal fees and costs for filing this Subchapter V Chapter 11 case and successfully prosecuting it through plan confirmation were less than $24,000.00.

bb.    On August 30, 2023, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for <u>Surrender Solutions, Inc.</u>, Case No.: 8:23-bk-10612-TA. This Debtor is related to Vici Wellness, Inc. The case was filed on March 24, 2023. The plan confirmed was the original plan that we proposed, with no amendments needed.  The Judge for both this Chapter 11 and the related Vici Wellness, Inc. Chapter 11 was Theodore C. Albert. Vici Wellness, Inc. is in the business of selling wellness products, but it sells its products on Amazon.  The main reasons for filing this bankruptcy case were the high monthly obligations on the business loans and the

insufficient cash flow to satisfy these payments. We reached adequate protection and plan treatment stipulations with the SBA and Amazon Capital Services.. Debtor's plan calls for repayment to the creditors over 60-months, with payments that the Debtor can afford. Surrender Solutions' plan was confirmed under 11 U.S.C. Section 1191(a) as a consensual plan. Our total legal fees and costs for filing this Subchapter V Chapter 11 case and successfully prosecuting it through plan confirmation were $25,234.00.

cc. On August 30, 2023, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for Yitbos Inc. dba Mr. Pickles Sandwich Shops, Case No.: 2:23-bk-20913 in the Eastern District of California, Sacramento Division. The case was filed on March 23, 2023. The plan confirmed was the original plan that we proposed, with no amendments needed. This case was assigned to Judge Christopher M. Klein. The Debtor was formed in 2015, and since then it acquired and operated five Mr. Pickles sandwich shops. Due to a shortfall in income, Debtor was forced to obtain hard money loans and fell behind on the payments. This is a common problem for many of our Chapter 11 clients. At the time of the filing, the Debtor also owed over $264,643 to California Department of Tax and Fee Administration ("CDTFA"). Through the reorganization plan, we helped the Debtor save its 5 sandwich shops, assume the lease agreements and executory contracts, and enter into a 5-year repayment plan to CDTFA and to general unsecured creditors. The hard money lenders are being repaid their principal without any interest, and all threatened lawsuits were avoided. Debtor's principal retained 100% of his equity interest in Yitbos Inc. We were able to obtain votes from all impaired classes in favor of Debtor's plan. In less than six months, we successfully managed this case from filing through a confirmed consensual plan. Our total legal fees and costs for filing this Chapter 11 case and successfully prosecuting it through plan confirmation were less than $50,000.00.

dd. On July 19, 2023, my Partner Sofya Davtyan and I confirmed a plan of reorganization in a Subchapter V Chapter 11 case entitled In re Unified Security Services, Inc, Case No.: 2:21-bk-18392-NB. The case was filed on November 2, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. The case was initially filed as a

regular chapter 11 case, but subsequently converted to subchapter V. The Debtor filed this Chapter 11 bankruptcy due to pending state court lawsuits against it, including a $4.5 Million wage and hour class action lawsuit and a pending wrongful termination lawsuit. Sofya and I facilitated a mediation with Debtor's largest creditor holding the $4.5 Million dollar claim, reached a global settlement at the mediation, and obtained the creditor's vote in favor of Debtor's plan confirmation. As a result of our efforts, the Debtor is finally able to end the lengthy and expensive state court action and resolve the litigation which has been pending against it and other non-Debtor defendants since 2012. The plan allows the Debtor to settle its remaining general unsecured debt totaling $320,031.55 by paying 1 cent on the dollar (1% over 5 years!) while paying the priority taxes owed to the California Department of Tax and Fee Administration, the Internal Revenue Service, and Employment Development Department over 5 years from the petition date.

ee. On March 10, 2023, Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Landmark 99 Enterprises, Inc. dba Wilma & Frieda's, Case No.: 1:22-bk-10148-VK. The case was filed on February 9, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor operates a restaurant in Palm Springs. The Subchapter V Plan reduces Debtor's secured obligations from $581,596.00 to $60,000 to be paid over 60 months at $1,000 per month and allows the Debtor to settle its general unsecured debt of approximately $546,647.42 by paying 5 cents on the dollar (5% over 5 years!). The plan proposes to cure the priority tax obligations owed to the IRS, California Department of Tax and Fees, and Employment Development Department over a 5-year period and resolve the IRS' post-petition administrative claim by making a payment on the effective date. The Debtor filed this Chapter 11 bankruptcy due to its delinquent lease obligations and its substantial tax liability. We were able to enter into plan treatment stipulations with the landlord and the IRS. Landmark was able to save its restaurant, avoid unlawful detainer proceedings, enter into agreements with taxing authorities, favorably resolve all of the claims against it, continue the operation of its business and focus on new

projects to increase the revenue through catering, special events, and other seasonal events. This case is an affiliate of Wilma and Frieda, which we confirmed four months ago.

ff. On February 22, 2023, my hard-working Partner Sofya Davtyan and I confirmed a chapter 11 plan of reorganization for another solar energy company, Energy Enterprises USA Inc. dba Canopy Energy, Case No.: 1:21-bk-11374-MT. The case was filed on August 12, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor, also referred to as EEUSA, has been providing solar panel installation services since 2016. EEUSA had $8,747,625.00 in scheduled unsecured debt, including employment labor law claims, workers' compensation claims, breach of contract lawsuits, unpaid vendor invoices, and hard money loans. In addition, EEUSA owed $417,111.00 in priority tax debt to the Internal Revenue Service, the Employment Development Department, the California Department of Tax and Fees, the City of Los Angeles Finance Department, and the Franchise Tax Board. EEUSA had secured debt of $167,395.94 which included an EIDL SBA loan, an EDD tax lien, and a judgment lien. On March 17, 2023 the Court entered its Order of Discharge – Chapter 11 in this case. Sofya and I were able to reach plan treatment stipulations with the EDD, the IRS, the City of Los Angeles and the secured judgment creditor. We proposed and confirmed a 5-year repayment plan for priority taxes, and discharged $8,747,625.00 in scheduled unsecured debt by paying a 1% distribution to allowed general unsecured creditors at $533.73 per month for 60 months. We were also successful in objecting to a number of claims and entered into stipulations with other creditors to greatly reduce the amount of their claims. The chapter 11 filing gave Debtor the breathing spell that it needed to restructure its business, reduce its overhead expenses, reduce its legal fees, favorably resolve the claims brought by third parties against some of its officers and generate the income needed to support its plan payments.

gg. On February 1, 2023, my Partner Sofya Davtyan and I confirmed a Chapter 11 Reorganization Plan in the United States Bankruptcy Court, Southern District of California, for Monica L. Coleman, Case No.: 21-04069-MM11. The case was filed on October 18, 2021. The plan approved was Debtor's second amended plan. Prior to the filing, the Debtor had been

unsuccessfully attempting to negotiate a loan repayment plan with her secured creditor, Hany Elwany, Trustee of the Hany Elwany Trust ("Elwany"). Debtor was unable to reach an agreement on the payoff amount, with a difference of more than a million dollars between the claimed amount and the amount that Debtor believed was correct. Elwany recorded a Notice of Default and a Sale Notice for the Debtor's Alpine property. We filed the chapter 11 bankruptcy for the Debtor in October 2021 to stop Elwany's foreclosure sale and get Monica Coleman the time that she needed to sell or refinance her property. We proposed and secured Court approval for a very low monthly adequate protection payment to Elwany, and gave the Debtor more than 16 months to market and sell the Alpine property.

hh. On December 23, 2022, Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization for El Calamar, Inc., Case No.: 8:22-bk-11188-TA. The case was filed on July 17, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. El Calamar, Inc. has operated a family-owned Mexican grill and seafood restaurant in Santa Ana since 2007. The event that triggered the bankruptcy filing was the action by judgment creditor Wesco Insurance Company to sell the Debtor's liquor license to satisfy the obligation owed by the Debtor to Wesco. Sofya and I stopped the sale by filing Chapter 11 for the Debtor. Then we entered into plan treatment stipulations with all of the Debtor's secured creditors (Funding Circle, OnDeck Capital, SBA, and Wesco). We proposed and confirmed a 5-year repayment plan to priority creditors holding tax claims, with a 5% pro-rata distribution to holders of general unsecured claims totaling $159,342.49. Unsecured creditors will share $132.79 in monthly plan payments for 5 years. The Debtor's principal will retain 100% of his equity ownership interest in El Calamar, Inc. The plan treatment stipulation with Wesco bifurcated Wesco's $135,205.65 claim into a $25,000.00 secured claim to be paid over 5 years at $416.66/month and treated the $110,205.65 balance as a general unsecured claim. The case was filed in July 2022 and within 6 months, we helped El Calamar successfully confirm a consensual Subchapter V Plan.

ii.     On December 13, 2022, my Partner Sofya Davtyan and I confirmed a Plan of Reorganization for Larry J. Cummings, Case No.: 6:20-bk-14708-SY. The case was filed on July 10, 2020. The plan confirmed was Debtor's second amended plan. Cummings used to operate two restaurants called The Grill, one located in Twin Peaks and one in Lake Arrowhead Village. The major event that precipitated the filing of the chapter 11 bankruptcy for the Debtor was the closure of his restaurants due to Covid-19 and the tax liability Debtor had incurred during the time he was ill and unable to manage the restaurants. Sofya and I were able to reject the lease for the Lake Arrowhead location. At the time of the rejection, Debtor had accumulated a post-petition administrative claim in favor of the Lake Arrowhead Landlord for $103,177.76 and a general claim for $341,021.98 representing the unpaid $137,010.26 pre-petition rent and the estimated $204,011.72 in post-petition damages under the Lake Arrowhead Lease. Sofya and I were able to enter into a plan treatment stipulation with Lake Arrowhead Landlord pursuant to which the entire claim was deemed satisfied in full upon allowing the Landlord to retain the $7,500 deposit and total payments by the Debtor of $12,500 to the Landlord in ten monthly installments of $1,250.00 each. Sofya and I were also successful in entering into plan treatment stipulations with the Internal Revenue Service and California Department of Tax and Fees. We proposed a successful reorganization plan which pays Debtor's general unsecured creditors with claims totaling $659,165.08 (including Lake Arrowhead Landlord's general unsecured balance) a 2% distribution over 5 years.

jj.     On November 23, 2022, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Wilma & Frieda Inc dba Wilma & Frieda's Cafe, Case No.: 1:22-bk-10147-VK. The case was filed on February 9, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor operates a restaurant in the Palm Desert area. The plan reduces Debtor's secured obligations from $640,000 to $60,000 to be paid over 60 months at $1,000 per month and allows the Debtor to settle its general unsecured debt totaling approximately $670,000 by paying 2 cents on the dollar (2% over 5 years)! The plan also proposes to cure the pre-petition tax obligations owed to

the IRS, California Department of Tax and Fees, and Employment Development Department over a 5-year period. The Debtor filed this Chapter 11 bankruptcy due to a pending notice of judgment lien, delinquent lease obligations, and substantial tax liability. We were able to enter into plan treatment stipulations with the landlord, and the IRS, and we recovered all of the levied funds back from Square. By hiring us and filing Chapter 11 bankruptcy, Wilma & Frieda was able to save its restaurant operation, avoid eviction, enter into favorable agreements with taxing authorities. We resolved all of the claims against it and continued the operation of its business without any interruption.

kk. On November 14, 2022, my Partner Sofya Davtyan and I confirmed a consensual Subchapter V Plan of Reorganization for <u>BMW, Nationwide Security, Inc</u>, Case No.: 2:22-bk-12988. The case was filed on May 27, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. The events that precipitated the bankruptcy filing were the pending lawsuits against the Debtor for labor law/discrimination by creditor Delores Ward, and the indemnification claim by Goldenvoice, LLC and the Al Malaikh Auditorium based on a personal injury claim made by Edna Herrarte-Giron. Debtor also had a Paycheck Protection Program loan for $500,000, which was not yet forgiven as of the petition date. We were able to enter into a Stipulation re Relief from the Automatic Stay whereby Goldenvoice, LLC and the Al Malaikh Auditorium only pursued the applicable insurance and recovered $0 from the Debtor. We proposed and confirmed a Subchapter V Plan of Reorganization which pays $0.00 to disputed creditor Delores Ward for her alleged discrimination/labor law claims. We reached an agreement with the SBA regarding the Debtor's PPP Loan, pursuant to which the Debtor will be able to resubmit its forgiveness application, and, if all or part of $500,000 PPP loan is not forgiven, the Debtor will only have to pay $12,218.29 in 12 installments of $1,018.19 each. By filing and confirming the Subchapter V Plan, we favorably resolved the Debtor's pending lawsuits and saved Debtor hundreds of thousands of dollars in debts and legal fees for defending these lawsuits in state court.

ll. On September 2, 2022, my Partner Sofya Davtyan and I confirmed a consensual Subchapter V Plan of Reorganization pursuant to 11 U.S.C. Section 1191(a) in the United States Bankruptcy Court, Eastern District of California, Fresno Division, In re California Roofs and Solar, Inc., Case No.: 1:22-bk-10061. The case was filed on January 17, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed. At the time of the filing of this case, Debtor's contractor's license was revoked due to an unpaid construction related civil judgment, as a result of which Debtor was not able to accept any jobs. Northern California Collection Services Inc. had obtained a $456,618.29 judgment against the Debtor based on a State Fund workers compensation audit. Our Chapter 11 filing enabled the Debtor to get its license put back into active good standing. Debtor was then able to accept new projects and get the income that it needed to support a feasible reorganization plan. Through Debtor's Subchapter V Plan, Debtor is paying Employment Development Department's priority tax obligation over 5 years from the petition date. Sofya and I were able to reach a plan treatment stipulation with Northern California Collection Services Inc., pursuant to which NCCS's claim was bifurcated into a $16,188.95 secured claim to be paid over 5 years at $343.97 per month and treat the $443,429.34 balance as a general unsecured creditor. The Debtor discharged $556,446.68 in general unsecured debt by paying a 2% dividend over 5 years at $185.48 per month. Debtor's principal, Carlos Colima, and its other shareholders all retained their interests in the Debtor.

mm. Also On September 2, 2022, my Partner Sofya Davtyan and I achieved a consensual plan confirmation under 11 U.S.C. Section 1191(a) for a Chapter 11 Subchapter V Plan of Reorganization in In re Cico Electrical Contractors, Inc., Case No.: 2:22-bk-19348-VZ. This case was filed on December 21, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. The Debtor was formed in 2004. It specializes in building and maintaining electrical infrastructures for various facilities, including installation of electrical systems (low, medium, and high voltage) and emergency stand-by generation equipment, doing work for health care facilities (OSHPD) and for public works MEP facilities.

Debtor also offers temporary power solutions, industrial controls, testing and preventative maintenance. Debtor's customers include counties and city governments, hospitals, and large private entities such as Disney, ABC, among others. Debtor typically acts as a subcontractor on various large projects but also performs work directly for customers, such as Kaiser Foundation, Riverside County, Veterans Administration, and Disney. The filing of the bankruptcy was caused by the aftermath of Covid-19 pandemic, which affected the Debtor's ability to collect the receivables from its clients, and by a number of lawsuits and judgments obtained against the Debtor. This was not an easy case. Sofya and I were able to reach several plan treatment stipulations with Debtor's largest creditors to achieve a consensual plan confirmation. Sofya and I reached a global settlement agreement with Debtor's largest secured creditor, American Contractors Indemnity Company ("ACIC") which had a Notice of Judgment Lien filed with the Secretary of State for $983,991.25 and was aggressively pursuing collection against the Debtor and its principals. We also reached a plan treatment stipulation with the Inland Empire IBEW-NECA Defined Contribution Trust Plan for payment of priority and administrative claims through Debtor's Sub V Plan. IBEW-NECA Trust also had a Notice of Judgment Lien filed with the Secretary of State and was intercepting payments which in turn was affecting Debtor's ability to continue operating its business. We entered into another plan treatment stipulation with National Electrical Benefit and National Electrical Annuity Plan. We also reached plan treatment stipulations with the Internal Revenue Service and Employment Development Department. The Debtor discharged $1,116,158.24 in general unsecured debt by paying a 2% dividend over 5 years at $309.49 per month. Debtor's case was highly contested by numerous creditors. Still, we were able to confirm a consensual plan in less than ten months from the December 21, 2021 filing date.

nn.     On August 15, 2022, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled <u>In re K. Anthony Incorporated dba K. Anthony Pre-School Inc.</u>, Case No.: 2:22-bk-10852-SK. The case was filed on February 16, 2022. The plan confirmed was the original plan that we proposed, with no amendments needed.

K. Anthony School was established in 1982 and offers education to students in kindergarten, pre-school, and elementary schools in Inglewood, California. The filing was primarily driven by the substantial tax liability owed by the Debtor to the IRS ($967,636.14) and the Employment Development Department ($189,073.25), and the tax garnishments Debtor faced for years. Through Debtor's confirmed Subchapter V Plan, the Debtor is paying $304,701.28 to the IRS and discharging the $662,934.86 balance by offering a 2% pro-rata distribution over 60 months. Through Debtor's Subchapter V Plan, the EDD's claim is being reduced to $79,178.64 to be paid over 5 years from the petition date, and the balance of $109,894.61 is to be discharged by paying a 2% pro-rata distribution over 60 months. It took us only six months from the filing date of February 16, 2022 to reach a consensual plan confirmation pursuant to 11 U.S.C. Section 1191(a), with a plan treatment stipulation reached with the Debtor's largest creditor, the IRS.

oo.     On July 18, 2022, my Partner Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Amphil Group, LLC, Case No.: 2:21-bk-18014-VZ. The case was filed on October 28, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. Amphil's secured creditor, SSA NE Assets, LLC was charging it a 45% default interest rate and attempting to foreclose on Amphil's multi-million-dollar single family residence located in Walnut, California. We filed Chapter 11 for Amphil and stopped the foreclosure sale on Amphil's property. During the Chapter 11, Sofya and I filed a Motion for Order Approving the Sale of the Property, filed an adversary proceeding against SSA, filed an objection to SSA's claim, and negotiated a settlement with SSA, resolving the adversary proceeding and the claims objection. We reduced the default interest rate from 45% to 24%, won SSA's vote in support of Amphil's Subchapter V Plan, and obtained a stipulation that allows Debtor sufficient time to sell the Walnut property.

pp.     On April 26, 2022, my Senior Associate Attorney Sofya Davtyan and I confirmed a Plan of Reorganization in a Chapter 11 case entitled In re DLR Express, Inc., Case No.: 6:20-bk-15258-SY. The case was filed on August 1, 2020. The plan confirmed was the first amended plan, DLR is a trucking company offering both local and interstate transport of freight in

California, Nevada, Arizona, Colorado, and New Mexico. The filing of the case was driven by a $6,094,702.00 default judgment obtained by Creditor Ronald E. Foster, Jr. against DLR arising from a state court personal injury lawsuit. DLR had an additional $612,855.00 in general unsecured debt which included various vendors, paycheck protection loan, and lines of credit. Debtor's secured creditors included obligations secured by Debtor's trucks and trailers with an estimated total claim amount of $1,980,673. At the time of filing, the Debtor believed that it did not have insurance coverage that would cover the default judgment claim. DLR had already tried and failed to set aside the default judgment prior to hiring my firm, and it was at imminent risk of having its bank accounts levied and all of its assets taken from it. We got the insurance carrier to cover the claim, had the judgment reduced from $6,000,000.00+ to $1,000,000.00, got the insurance carrier to pay the $1,0000.000 and completely settled the claim at no cost to the Debtor! We prevented an aggressive creditor / competitor from taking a Rule 2004 Examination, stopped an attempted hostile takeover of the company, and confirmed a consensual plan of reorganization for DLR.

qq.     On March 30, 2022, I confirmed a plan of reorganization in a SubChapter V Chapter 11 Case entitled In re BCT Deals, Inc., Case No. 2:21-bk-18156-ER. The case was filed on October 22, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. The Plan allows the Debtor to pay twelve cents on the dollar to its general unsecured creditors over 5 years. Prior to the bankruptcy filing, the Debtor was embroiled in eight (8) lawsuits with some plaintiffs/creditors having obtained writs of attachment against the Debtor. The bankruptcy filing put an end to all litigation against the Debtor. It gave the Debtor the breathing room it needed to settle with its major creditors and reorganize its operations. Sam was able to negotiate settlements with two of Debtor's secured creditors, PayPal/Swift Bank and FC Marketplace, LLC, and its largest unsecured creditor Eastern Unlimited, Inc. dba Fun World. These settlements resulted in overwhelming support for the Plan from Debtor's creditors. Unsecured creditors holding 83.33% of claims in number voted to accept the Plan, and 89.14% of claims in amount voted to accept the Plan as well. The Plan was confirmed as a consensual

Plan, which allowed the Debtor to receive its Discharge immediately rather than having to wait to substantially consummate the terms of the Plan first. Along the way, we were able to also find a new warehouse for the Debtor that significantly reduced its monthly rent from $25,000.00 per month to only $8,000.00 per month.

rr.     On December 28, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a Chapter 11 Plan of Reorganization in a Chapter 11 case entitled In re Anait Akopyan, Case No.: 1:19-bk-11192-MB. The case was filed on May 13, 2019. The plan confirmed was the fourth amended plan. Debtor owns two rental properties (the Catalina Rental and Kingswell Rental), for which no payments were made for over 5 years. This case was filed to stop the foreclosure sale for the Catalina Rental. Both rental properties are secured by deeds of trust in first and second position and multiple judgment liens. The total amount for the judgment liens is $1,077,108.00. Nationstar Mortgage (1st TD Holder for the Catalina Rental) filed a claim for $2,176,575.94, asserting $731,753.55 in pre-petition arrears. We entered into a plan treatment stipulation with Nationstar Mortgage whereby the pre-petition arrears were added to the principal balance of the loan and the loan was re-amortized over a forty-year period. Real Time Resolution ("RTR") (holder of the 2nd Td on the Catalina Rental) filed a claim for $1,386,115.47. We were able to enter into a plan treatment stipulation with RTR to treat $23,424.06 as a secured claim to be paid over 60 months from the Effective Date, and treat the $1,362,691.41 balance as a general unsecured claim (0% distribution). Nationstar Mortgage (1st TD Holder for the Kingswell Rental) filed a claim for $1,145,162.50, asserting $117,725.18 in pre-petition arrears. Debtor's confirmed plan proposes to pay the pre-petition arrears over 60 months from the Effective Date. Real Time Resolution (2nd TD holder for the Kingswell Rental) filed a claim for $456,165.68. Pursuant to a claim treatment stipulation we reached with RTR, the $456,165.68 is considered a general unsecured claim and is receiving 0% through Debtor's confirmed plan. The judgement liens totaling $1,077,108.00 were all successfully avoided from both the Kingswell and Catalina rentals and holders of these judgment liens are receiving 0% through Debtor's confirmed plan. Sofya and I were also able to successfully resolve the two adversary proceedings filed against the

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 40 of 61

Debtor by WFG Insurance and Novastar, which also resolved the underlying state court litigations that were pending for over 6 years. Through the plan, Sofya and discharged $2,919,470.22 in debt at 0% distribution to holders of these claims, and successfully renegotiated the loan terms for both rental properties and resolved the adversary proceedings.

ss. On December 21, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re Pacific Environmental Technologies, Inc., Case No.: 2:21-bk-16058-DS. The case was filed on July 28, 2021. The plan confirmed was the original plan that we proposed, with no amendments needed. Pacific Environmental Technologies, Inc. ("PETI") has been in business since 1989 and offers modular, soft wall, mobile, and conventional cleanrooms, as well as refrigerated storages, freezers, and solar and energy storages to pharmaceutical, aerospace, and industrial companies. At the time of the filing, PETI had approximately $317,642.55 in secured debt, $253,602.84 in priority unsecured debt, and $1,813,556.93 in general unsecured debt, which included lawsuits for Breach of Contract, Open Book Account, a Contractors State License Board complaint, and a pending Unlawful Detainer case. Sofya and I stayed the lawsuits, entered into a plan treatment stipulation with the landlord, resolving the pending unlawful detainer action and allowing the Debtor to successfully assume the lease. The confirmed Sub V Plan reduced PETI's secured obligations from $317,642.55 to $265,751.82 by proposing to pay $3,164.97 per month for 60 months, set up a payment arrangement for Debtor to satisfy its $236,159.95 priority tax obligations by making monthly payments over 60 months from the petition date, and discharged $1,813,556.93 by offering a 10% distribution to the allowed general unsecured creditors ($1,656,590.74) over 5 years at $2,783.24/month.

tt. On June 29, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a Subchapter V Plan of Reorganization in a Chapter 11 case entitled In re RedRhino: The Epoxy Flooring Company Inc., Case No.: 2:20-bk-20257-SK. The case was filed on November 16, 2020. The plan confirmed was the original plan that we proposed, with no amendments needed. RedRhino is in the business of providing protective coating, overlaying, and polished concrete

services to the industrial and commercial work spaces. At the time of the filing, RedRhino had approximately $782,275 in secured debt and approximately $781,174 in general unsecured debt, which included several confessions of judgments obtained against RedRhino. The confirmed Sub V Plan reduced RedRhino's secured obligation from $782,275 to $75,926.87 by proposing to pay $1,265.45 per month for 60 months, and discharged $1,542,086.85 by offering a 1% distribution to the allowed general unsecured creditors over 5 years at $336.70 per month!

uu. On June 10, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a plan of reorganization in a Chapter 11 case entitled In re Talk Venture Group, Inc., Case No.: 8:19-bk-14893-TA. The case was filed on December 19, 2019. The plan confirmed was the original plan that we proposed, with no amendments needed. Talk Venture Group is in the business of selling various merchandise on Amazon.com. The event precipitating the filing of Talk Venture's chapter 11 bankruptcy was the UCC Lien Notice sent by Pearl Beta Funding, LLC to Amazon's Legal Department requesting Amazon to divert Talk Venture's receivables to Pearl Beta Funding, LLC to satisfy the outstanding obligation. Talk Venture Group's secured liabilities consisted of 10 business loans with the creditors holding UCC Financing Statements for an estimated $4.3 Million and monthly payments on these obligations totaling $140,594 per month! Talk Venture also had an estimated $1.8 Million in general unsecured claims. The confirmed plan reduced Talk Venture's secured obligation from $4.3 Million to $1,297,990.91, reduced the monthly payments on the secured obligations from $140,594/month to $16,743/month, and discharged $4,109,885 by offering a 1.1% distribution to these creditors over 5 years at $757.04 per month! Holders of the top 4 senior secured claims (Wells Fargo Bank and Banc of California) vigorously objecting to Debtor's Plan and unsuccessfully opposed almost everything that we did in this case. Sofya and I were able to resolve Wells Fargo's and Banc of California's objections and gain their votes in favor of Debtor's Plan.

vv. On June 10, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a plan of reorganization in a Chapter 11 case entitled In re Paul Se Won Kim, Case No.: 8:20-bk-10168-TA. This case was filed on January 16, 2020. The plan confirmed was the original plan

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

that we proposed, with no amendments needed. This case is related to Talk Venture Group, as Mr. Kim is the principal and owner of Talk Venture Group. The catalyst for Mr. Kim's personal chapter 11 bankruptcy was the decline in Talk Venture's business revenue, which made it difficult for Mr. Kim to stay current with all his personal obligations, and the business debts that he had personally guaranteed. Due to the decline in Mr. Kim's income, at the time of the filing, he was delinquent on his mortgage payments to Union Bank (holder of both the 1st and 2nd loans), had an unpaid property tax bill for $63,243, tax liability of approximately $58,582, and general unsecured obligations totaling approximately $6,160,229.58. The confirmed plan gives Mr. Kim 5-years to pay the pre-petition mortgage arrears owed to Union Bank and the delinquent property taxes. The plan reduces Mr. Kim's general unsecured liability from $6,160,229.58 to $3,694,862.75 and pays holders of these allowed general unsecured claim 1% over 5 years at $615.79 per month!

ww.    On May 21, 2021, my Senior Associate Attorney Sofya Davtyan and I confirmed a plan of reorganization for a non-profit organization in a Subchapter V Chapter 11 case entitled <u>In re Real Estate Recovery Mission</u>, Case No. 2:20-bk-19134-VZ. The case was filed on October 7, 2020. The plan confirmed was the original plan that we proposed, with no amendments needed. The catalyst for the filing of the case was a pending foreclosure sale for one of the Debtor's six properties, which provide safe and affordable housing to low-income veterans and homeless people in Riverside County. We stopped the foreclosure sale for this property, got the Debtor the time that it needed to rehab 2 of the properties, assisted the Debtor with the sale of three of its other real properties by successfully filing sale motions, settled the adversary proceeding complaint filed against the Debtor for Declaratory Judgment, and proposed and confirmed a five-year repayment plan to Debtor's general unsecured creditors at $183.34/month. The sales of the properties generated money to help the homeless. By filing the Chapter 11 bankruptcy and confirming the Subchapter V Plan, the Debtor was able to avoid losing the equity in its properties and continue its charitable mission.

xx. On May 12, 2021, I confirmed a plan of reorganization in a Subchapter V Chapter 11 Case entitled In re Nuance Energy Group, Inc., Case No. 2:20-bk-17761-VZ. The case was filed on Augst 25, 2020. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtor to pay sixteen cents on the dollar to its general unsecured creditors over 5 years, wipes out over $3 million dollars of debt, and makes the Debtor's principal its sole shareholder. We overcame the objection of one of the Debtor's largest creditors and put an end to all litigation against the Debtor. Along the way, we successfully objected to numerous creditor's claims and entered into stipulations with other creditors regarding their claims. We strategically used several of the unique features of Subchapter V to confirm a plan that could only be confirmed as a Subchapter V Plan. This includes the elimination of the "consenting class" requirement and the "absolute priority rule."

yy. On December 18, 2020, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Marco General Construction, Inc., Case No.: 2:19-bk-14758-BB. The case was filed on April 25, 2019. The plan confirmed was Debtor's first amended plan, The catalyst for the filing of this case was a $416,506.49 default judgment against the Debtor from a workers' compensation insurance audit. When the client contacted me for the first time, its bank account had already been levied on and it was completely out of money. I filed Chapter 11 for the client, thereby triggering the automatic stay. When the Debtor's bank refused to promptly release the Debtor's funds to the Debtor and creditor's counsel refused to cooperate with us, I filed and won a Motion for Turnover of Property of the Debtor. The Court ordered the bank to release its levy on the Debtor's account and return 100% of the levied funds to the Debtor. I sought and obtained relief from stay from the Bankruptcy Court to file a Motion to Set Aside Default and Default Judgment in the State Court case. Then Sam and I prepared, filed and won a Motion to Set Aside the Default and Default Judgment. A secondary factor in the filing of the Chapter 11 case was a Florida lawsuit against the Debtor for $100,000+ based on the Debtor's liability for a hard money loan that was secured by all of Debtor's receivables. Sam worked out Plan Treatment Stipulations with 2 of the Debtor's secured, hard money lenders, Kalamata Capital Group and I

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

West Capital, LLC. This created an impaired class that consented to our plan of reorganization, giving us what we needed to confirm our plan. Then, by getting a vote from American Express in favor of our proposed plan, we won approval from the general unsecured class of creditors too! The confirmed plan includes these plan treatment stipulations, and pays unsecured creditors 5% of their claims over 5 years. We took a company that was being strangled by a default judgment and hard money loans and gave it new life.

zz.     On December 9, 2020, my Senior Associate Attorney Sofya Davtyan and I confirmed a plan of reorganization in a Chapter 11 case entitled In re C2 Plumbing, Inc, Case No.: 2:19-bk-23459-VZ. The case was filed on November 19, 2019. The plan confirmed was the original plan that we proposed, with no amendments needed. The catalyst for the filing of the case was a plumbing job gone wrong for a hotel. This led to the filing of a lawsuit against the Debtor by the general contractor on the job and the insurance company that paid out on a million dollar plus claim. A secondary factor in the filing of the Chapter 11 case was the Debtor's liability for approximately $200,000 in prepetition payroll taxes. Debtor's state court litigation counsel was unable to resolve the state court litigation case. I resolved it through Chapter 11 without the Debtor paying any money whatsoever to the Plaintiffs! The bankruptcy filing stayed the litigation. I worked out a deal with Plaintiff's counsel whereby my client stipulated to relief from stay on the condition that Plaintiffs limit any recovery to insurance proceeds only. In doing so, I made a lethal threat to the company disappear. The Debtor's priority tax obligations will be paid out over 5 years. The payment of these priority taxes enabled the Debtor to settle its remaining $91,911.97 in unsecured debt claims over 5 years at a more than 50% discount.

aaa.     On October 28, 2020, I confirmed a plan of reorganization and obtained the order of discharge in a Chapter 11 case entitled In re Unified Protective Services, Inc, Case No.: 2:19-bk-16482-NB. The case was filed on June 1, 2019. The plan confirmed was Debtor's first amended plan. The plan allows the Debtor to settle its general unsecured debt totaling $9,420,330.89 by paying 1 cent on the dollar (1% over 5 years!) while paying the priority taxes that it owes over 5 years from the petition date. The Debtor filed this Chapter 11 bankruptcy due

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

to 14 pending state court lawsuits filed against it, including wage and hour class action lawsuits, personal injury lawsuits, and racial harassment and discrimination claims. By hiring us and filing Chapter 11 bankruptcy, Unified avoided lengthy and expensive state court litigation, resolved all of the claims against it and continued the operation of its business without any interruption. We did all this over the strong objections of class action counsel for the labor law Plaintiffs.

bbb.    On July 20, 2020, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Edmond Melamed and Rozita Melamed, Case No.: 2:18-bk-22426-NB. The case was filed on October 22, 2018. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtors to keep their principal residence, offer a repayment plan to the Internal Revenue Service, and end the years-long state court litigation filed by secured judgment creditor Mazakoda, Inc. against the Debtors for $1,195,200.00, the related appeal, and the adversary proceeding for denial of discharge. At the time of the filing of this Chapter 11 bankruptcy, Mazakoda, Inc. had already obtained a judgment for judicial foreclosure and a writ of sale had been issue directing the Sheriff to sell the Debtors' home at auction. I was able to reach a Settlement Agreement with Mazakoda, Inc. which resolved the pending state court litigation, the appeal and the adversary proceeding by paying Mazakoda, Inc. $285,000 over 75 months at 0% interest. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtors were able to stop the foreclosure on their property and avoid the expense and likely adverse results of the appeal. Debtors' plan offers 23.5% to their general unsecured creditors over 5 years.

ccc.    On January 23, 2020, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Exie Marie Leagons, Case No.: 2:18-bk-17859-VZ. The case was filed on July 9, 2018. The plan confirmed was the original plan that we proposed, with no amendments needed. I was able to reach claim treatment stipulations with the Debtor's secured creditors regarding the Debtor's principal residence and her three rental properties. The treatments called for fixing the interest rates for the rental properties, extending the maturity date for one of the loans, and

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 46 of 61

allowing the Debtor to pay off the arrears under manageable terms. I was able to get a consensual plan, whereby all impaired classes voted in favor of confirmation of Debtor's plan.

ddd. On November 27, 2019, I confirmed a plan of reorganization in a Chapter 11 case entitled <u>In re Damu Vusha and Akiba Vusha</u>, Case No.: 2:18-bk-11284-ER. The case was filed on February 5, 2018. The plan confirmed was Debtor's first amended plan. The plan allows the Debtors to repay their creditors over 5 years while keeping their principal residence and two rental properties. The Debtors filed this Chapter 11 bankruptcy due to the pending foreclosure sale on their principal residence by Wells Fargo Bank. At the time of the filing of the Chapter 11 bankruptcy case, Debtors had a pending state court lawsuit against Wells Fargo for denial of loan modification, which they filed in 2016. I was able to reach a Settlement Agreement with Wells Fargo Bank which resolved the pending state court litigation and modified the Debtors' existing loan terms by reducing the variable 5.5% interest rate to 3% fixed interest rate and adding the $167,050.46 in pre-petition arrears to the principal balance of the loan to be repaid over 228 months. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtors were able to stop the foreclosure on their property and avoid the expense and likely adverse results of taking the state court case to trial.

eee. On October 11, 2019, I confirmed a plan of reorganization in a Chapter 11 case entitled <u>In re Ameriquest Security Service</u>, Case No.: 2:18-bk-21241-WB. The case was filed on September 25, 2018. The plan that Debtor confirmed was its first amended plan. The plan allows the Debtor to settle its general unsecured debt totaling $1,121,506.34 by paying 8 cents on the dollar (7.9% over 5 years). The Debtor filed this Chapter 11 bankruptcy due to several pending state court wage and hour class action lawsuits against the Debtor. On January 24, 2020, the Court entered its Order of Discharge – Chapter 11 in the <u>In re Ameriquest Security Service</u> case. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtor avoided lengthy and expensive state court litigation and instead continued the operation of its business without any interruption.

fff.    On April 23, 2019, I confirmed a plan of reorganization in a Chapter 11 case entitled In re John Wilcox and Gwenn Wilcox, Case No. 2:17-bk-24446-SK. The case was filed on November 22, 2017. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtors to settle their general unsecured debts of $1,238,073.21 by paying 5.4 cents on the dollar (5.4% over 5 years). The Debtors filed this Chapter 11 bankruptcy due to the pending foreclosure sale on one of their rental properties and state court lawsuits filed by Direct Capital and Next Gear against the Debtors for a business debt personally guaranteed by the Debtors. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtors were able to stop the foreclosure of their property, avoid the expense and likely adverse results of taking the state court cases to trial and eliminate 94.6% of their unsecured debt.

ggg.    On October 4, 2018, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Zenah Essayli, Case No. 8:17-bk-14597-CB. The case was filed on November 22, 2017. The plan confirmed was the original plan that we proposed, with no amendments needed. the plan allows the Debtor to settle her general unsecured debts of $1,166,540.14 by paying 18 cents on the dollar (18 % over 5 years). The Debtor filed this Chapter 11 bankruptcy due to two pending state court lawsuits filed by American Express against the Debtor for a business debt personally guaranteed by the Debtor. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtor was able to avoid the expense of taking the state court cases to trial and get a much better result. Instead of having a large judgment against her for the full amount due and a judgment lien against her home, she settled with Amex and her other creditors for 18 cents on the dollar payable over 5 years, with no judgment against her and no judgment lien attached to her home. She is now focused on the on successful operation of her business.

hhh.    On August 20, 2018, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Union County Transport Inc., Case No.: 2:17-bk-21514-BB. The case was filed on September 19, 2017. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtor to settle its general unsecured debt totaling

DEBTOR ACADEMY OF VOLLEYBALL, INC AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING. DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

$273,826 by paying 10 cents on the dollar (10% over 5 years). The Debtor filed this Chapter 11 bankruptcy due to a pending state court wage and hourly class action lawsuit against the Debtor. By filing the Chapter 11 bankruptcy and confirming the plan, the Debtor avoided lengthy and expensive state court litigation and instead continued the operation of its business without any interruption.

iii.     On April 24, 2018, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Shahla Dowlati, Case No. 1:16-bk-10073. The case was filed on January 11, 2016. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtor to settle her general unsecured debts of $1,882,151.18 by paying a penny on the dollar (1%) over 5 years! The confirmed plan also included the successful modification of loans on Debtors' residence and on Debtor's rental property.

jjj.     On October 24, 2017, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Rescue One Ambulance, Case No.: 2:17-bk-10102-NB. The case was filed on January 1, 2017. The plan confirmed was Debtor's first amended plan. Rescue One provides medical transportation services. When Rescue One hired me, it was on the verge of being shut down by the IRS for failure to pay payroll taxes. In addition, it had several years of tax returns that were unfiled and other years of tax returns that needed to be amended. Its owner was facing substantial personal liability for the trust fund portion of these unpaid payroll taxes. By filing tax returns for unfiled years and by amending tax returns, the Debtor got the IRS to reduce its claim by approximately $200,000.00. I negotiated a plan treatment stipulation with the IRS. This stipulation allowed Rescue One to pay back the priority portion of its payroll tax liability over 5 years from the bankruptcy petition date and allowed it 7 years to repay the remaining secured part of the IRS claim. The plan was confirmed without any objections by any creditors. Debtor's general unsecured creditors are set to receive 5% of the total amount of their claims pursuant to the confirmed Plan.

kkk.     On July 10, 2017, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Amos Acoff, Case No.: 2:16-bk-10109-VZ. The case was filed on January 5, 2016.

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the successful reorganization of the loans on the Debtor's primary residence and six rental properties. I was able to reach claim treatment stipulations with Debtor's secured creditors, including the Internal Revenue Service, for treatment of their claims, which included reducing and fixing the interest rates for the rental properties and successfully bifurcating the loans for two of the Debtor's rental properties, stripping off approximately $135,000. I was able to get a consensual plan, whereby all impaired classes voted in favor of confirmation of Debtor's plan, which pays only 5% over 5 years to the Debtor's general unsecured creditors who were owed $180,259.

III.     On June 14, 2017, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Bbeautiful LLC, a California LLC, Case No. 2:16-bk-10799-ER. The case was filed on January 22, 2016. The plan confirmed was Debtor's second amended plan. The Debtor is a brand-maker and retailer of a wide range of personal beauty products for skin, hand & nail, body, hair, pedicure, makeup, and fragrance. Prior to the commencement of its chapter 11 case, and for the first several years of its existence, the Debtor was unable to operate at a profit. Prior to filing Chapter 11, Bbeautiful was involved in numerous legal disputes, including several lawsuits. On January 8, 2016, the lawsuit Too Faced Cosmetics, LLC v. Bbeautiful, LLC & Chrislie Formulations, LLC, Case No. 8:16-cv-00033-JLS-DFM (C.D. Cal.) was commenced against the Debtor. The Too Faced lawsuit included claims alleging violations of Section 43 of the Lanham Act and common law trade dress infringement. The case was stayed by the bankruptcy filing on February 8, 2016. Too Faced Cosmetics, LLC filed a Proof of Claim in the bankruptcy proceeding for $290,729.29. Through negotiations within the Chapter 11 bankruptcy, this claim was reduced to $50,000.00. A million dollar claim from a former employee Xi Zhang was withdrawn entirely. I objected to an alleged breach of contract claim from Ocean Blue, Inc. for $26,213.00, and the Court sustained my objection, disallowing the claim. Under the confirmed plan, general unsecured creditors with allowed claims will receive 50% of their claim in 10 equal quarterly installments.

Case: 26-30265     Doc# 52     Filed: 05/14/26     Entered: 05/14/26 20:23:58     Page 50 of 61

mmm. On April 29, 2016, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Bucur Rentals, LLC. Case No. 6:14-bk23216. The case was filed on October 27, 2014. The plan confirmed was Debtor's Second Amended Plan. I filed a Valuation Motion for Bucur Rentals, LLC with regards to its principal asset, real property located at 2785 Rubidoux Boulevard, Riverside California 92509. Through negotiations with the lender Fidelity Mortgage Lenders, Inc., I was able to reduce the amount of secured debt on the property by $153,053.90. Bucur Rentals, LLC generates income by leasing monthly parking places to trucks and trailers on the Rubidoux Property. The plan pays 1.627 cents on the dollar to all of Debtor's unsecured creditors. I settled $174,084.78 in general unsecured claims by paying a total of $2,883.00 at $48.06/month over five years. That's pretty good! I entered into a stipulation with the Riverside County Tax Collector to get the vote that we needed to confirm Debtor's Plan of Reorganization.

nnn. On February 12, 2016, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Edward D. Roane, Case No.1:14-bk-15621-VK. The case was filed on December 23, 2014. The plan confirmed was Debtor's first amended plan. Mr. Roane is a successful, experienced general contractor that ran into problems on a construction project. Unanticipated costs and disputed change orders left him without the funds needed to complete the project. His main creditor came after him, claiming a liability of $388,420.00. 47 other creditors, many related to the same project, had claims against him as well. His total unsecured debt was $677,230.32. I settled all of these claims for 30.2 cents on the dollar payable over five years. Like the vast majority of my Chapter 7, Chapter 11 and Chapter 13 clients, Mr. Roane kept all of his property.

ooo. On December 23, 2015, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Steven A. Sassoon and Julie A. Sassoon, Case No. 2:14-bk-12637-TD. The case was filed on February 12, 2014. The plan confirmed was Debtor's first amended plan. The plan allows the Debtors to settle their general unsecured debts totaling $457,721.00 by paying 4.71 cents on the dollar (4.71% over 5 years). The Debtors filed this Chapter 11 bankruptcy due to a $400,000.00 state court judgment entered against them and in favor of Ronald Shaffer and

Debbie Shaffer after 2 appeals and ten years of litigation with other counsel. I negotiated a settlement with the Shaffers for $65,000.00 and created a separate impaired class in our Chapter 11 Plan for this debt so we could use this settlement to help confirm our Plan of Reorganization for the Sassoons.

ppp.    On March 11, 2015, I confirmed a plan of reorganization in a Chapter 11 case entitled, In re Michael J. Parker and Cristina M. Parker, case no. 6:13-3051-MJ. The case was filed on December 27, 2013. The plan confirmed was the original plan that we proposed, with no amendments needed. The plan allows the Debtors to settle their general unsecured debts totaling over $1,100,000.00 by paying a penny on the dollar (1%) over 5 years! The confirmed plan also included the successful modification of the loans on Debtors' residence, vehicles, and boat. I also settled four state court lawsuits for Mr. Parker and his business.

qqq.    On October 28, 2014, I confirmed a plan of reorganization in a Chapter 11 case entitled In re Nabih Mansour and Mary Mansour, Case No. 2:12-bk-48622-RN. The case was filed on November 20, 2012. The plan confirmed was Debtor's third amended plan. The Mansours filed a Chapter 11 bankruptcy to stop a scheduled foreclosure sale of their home. Dr. Nabih Mansour is a veterinarian. He owns and operates N&M Evergreen Hospital, Inc. Mary Mansour is a pharmacist. Prior to filing bankruptcy, the Mansours and their company filed a construction defects complaint against MK Construction ("MK") and certain other Defendants. MK filed a $806,107.78 Proof of Claim in the Mansours' bankruptcy case and filed an Adversary Proceeding Complaint against the Mansours to make their alleged debt nondischargeable. With the help of our law firm, the Debtors completed a global settlement which resulted in the Mansours receiving $939,000.00 from MK and the other defendants. The Adversary Proceeding that MK filed against the Mansours was dismissed with prejudice, with no payment to MK. The Mansours used part of their settlement money to pay off their creditors, including payment of back taxes owed to the IRS and payment of a large arrearage on their home mortgage. The Mansours kept their home, favorably settled their state court litigation, and settled all of their debts.

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

rrr. On August 24, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Hoskins Enterprises, Inc., Case No. 1:11-bk-15148-GM. The case was filed on April 26, 2011. The plan that was confirmed was Debtor's second amended plan, Hoskins Enterprises, Inc. provides adult day care services for mentally disabled adults. Its principal place of business is at 426 E. 99th Street, Inglewood, CA 91301. Debtor was forced into bankruptcy by a wrongful termination lawsuit from Angela Grundy and a liability for unpaid payroll taxes due to the IRS and the EDD. I settled the Grundy claim and entered into a plan treatment stipulation with Ms. Grundy whereby Ms. Grundy reduced her claim from $277,500 in damages to $55,000.00 to be paid in quarterly payments over 5 years. General unsecured claims totaling $390,100.28 were paid 19.8 cents on the dollar. The owners of Hoskins Enterprises retained 100% of their ownership interest in Hoskins Enterprises, Inc.

sss. On May 5, 2014, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Ruth Hasson, Case No. 2:13-bk-15138-RK. The case was filed on February 27, 2013. The plan that was confirmed was Debtor's first amended plan. When the Debtor hired me, she wanted only one thing: to save her home from being lost in foreclosure. We saved her home. The day before the trustee sale, we filed a Chapter 11 petition. We stipulated to plan treatment with the lender that holds the First Deed of Trust on her home and settled her unsecured debts at a large discount, with payments to be made over 5 years.

ttt. On December 11, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled, In re Martha Gutierrez and Aaron Gutierrez, Case No # 2:12-bk-32047-WB. The case was filed on June 26, 2012. The plan that was confirmed was Debtor's first amended plan. This case involved the successful reorganization of the loans on the Debtors' two rental properties. I was able to successfully value both properties in order to strip off secured liens in the approximate amount of $464,398.00. I was also able to obtain a consensual plan amongst all of the Debtors' creditors and pay the general unsecured creditors, who were owed approximately $1,055,000.00, only 1% over 5 years.

uuu.    On November 6, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Jamal Elyazal, case number 6:12-bk-11709-MW. This case was filed on February 9, 2012. The plan that was confirmed was Debtor's fourth amended plan. This case involved the successful reorganization of the loans on the Debtor's primary residence and his 17 rental properties. I was able to successfully value the Debtor's properties in order to bifurcate the secured claims on all three of the Debtors' income properties as well as the second lien on Debtors' primary residence, stripping off approximately $4,400,000.00 in secured liens. I was also able to successfully cram down the objecting classes and pay only 1% over 5 years to the Debtor's general unsecured creditors who were owed approximately $6.2 million. This case set the record in the Santa Ana Division of the Central District for most properties reorganized in an individual Chapter 11 case.

vvv.    On October 1, 2013, I confirmed a plan of reorganization in a Corporate Chapter 11 Case entitled In re CDG Materials, Inc., Case No.: 6:12-bk-12935-MH. This case was filed on February 6, 2012.  The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the successful reorganization of a corporation principally engaged in the business of manufacturing and selling various types and grades of gravel and sand. For over 28 years, the Debtor was a well-known and trusted name within the construction community for its high-quality production of sand, gravel and crushed rock. The Debtor's reputation was compromised and nearly lost when the corporation's income was overwhelmingly outweighed by its liabilities to various creditors. I successfully negotiated plan treatment stipulations with the Debtor's main creditors and convinced 100% of the creditors that voted on the plan to accept the plan. The plan was successfully confirmed, with general unsecured creditors receiving only 2.82% of the total amount of their debt.

www.  On June 5, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Vicente Zarate and Ingrid R. Zarate, Case No.: 2-12-bk-16597-PC. This case was filed on February 24, 2012. The plan that Debtors confirmed was their second amended plan. This case involved the successful reorganization of the loans on the Debtors' primary residence

and their multiple rental properties. The Plan also provided for the successful sale of one of their income properties. I was able to successfully value the Debtors' properties in order to bifurcate the secured claims on all three of the Debtors' income properties as well as the second lien on Debtors' primary residence, stripping off approximately $3,416,000.00 in secured liens. I was also able to successfully cram down the objecting classes and pay only 1% over 5 years to the Debtors' general unsecured creditors who were owed approximately $7.2 million.

xxx. On May 10, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Alejandro Caray Casasola and Zenaida Urmanita Casasola, Case No. 2:11-bk-47034-ER. The case was filed on August 30, 2011. The plan confirmed was the original plan that we proposed, with no amendments needed. When the Debtors hired me, they wanted three things: to keep their primary residence, to strip the second lien of $325,000.00 on their primary residence, and to work something out with Wells Fargo regarding a $500,000.00 debt. I stipulated to plan treatment with the first on Debtors' primary residence, got the second on Debtors' primary residence forgiven in full, and settled the Debtors' total unsecured debts of approximately 1 million dollars, including the $500,000.00 Wells Fargo claim, by paying out only six cents on the dollar over 5 years. My clients got everything that they wanted.

yyy. On May 1, 2013, I confirmed a plan of reorganization in a Consolidated Chapter 11 Case entitled In re Steven Michael Mehr and Larissa Deshaviegh Mehr, lead case number 8:11-bk-12166-ES, consolidated case number 8:11-bk-17014-ES. Both cases were filed on February 6, 2011. The plan confirmed was Debtors' second amended plan. This case involved the successful reorganization of Debtors' primary residence in Orange County and 7 rental properties located throughout Orange County and Los Angeles County. The Debtors wanted to keep all of their properties as a retirement plan for their future. I successfully brought and prevailed on 8 valuation motions that reduced the amount of the secured first lien on each of Debtors' investment properties, and completely unsecured the second lien on each of Debtors' properties. With over 90 creditors, I resolved numerous disputes related to creditors' claims, including one with the City of Cudahy. The plan was confirmed with a favorable ballot received

from every secured creditor in the bankruptcy, with general unsecured creditors receiving only 1.00% of the total amount of their debt.

zzz. On March 27, 2013, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Arthur Melnikov and Alina Kutsevol, Case No.: 1:11-bk-11614-GM. This case was filed on February 7, 2011. The plan confirmed was Debtors' fourth amended plan. This was a personal Chapter 11 for individual Debtors that owned a home and two rental properties. The Debtors were in bankruptcy for 15 months before they hired me. During that time, there was little or no progress on their case. After Debtors retained my services, I successfully reduced the Debtors' secured debt on their principal residence by $201,153.00 by successfully bringing a Lien Avoidance Motion pursuant to 11 U.S.C. §506(d). I was also successful in reducing Debtors' secured debts on their Mammoth Rental property by $280,000.00 by successfully bringing a Motion for Order to Value Collateral and Wholly Avoid Security Interest of Junior Trust Deed Holder, and by bifurcating/partially avoiding the secured interest of the first trust deed holder. Debtors were able to keep all three properties.

aaaa. On December 17, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Ovazine Yvette Shannon, Case No.:2:11-bk-38912-VZ. This case was filed on July 5, 2011. The plan that was confirmed was Debtor's second amended plan. This case involved the successful reorganization of Debtor's six multi-unit apartment building rental properties. The Debtor came to me after filing three prior unsuccessful Chapter 11 bankruptcies with two different attorneys. Filing the Debtor's fourth Chapter 11 bankruptcy, I successfully overcame a 180-day bar. I then brought and prevailed on six valuation motions that reduced the amount of the secured first lien on all six rental properties, and completely stripped off the second liens on properties that had seconds, thereby rendering them completely unsecured. The plan treatment of unsecured creditors paid out seven cents on the dollar for over 5 years.

bbbb. On July 23, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Richard G. Miller and Shannon Miller, Case No # 6:10-bk-31105-MJ. This case was filed on July 7, 2010. The plan confirmed was the original plan that we proposed, with no

amendments needed. This was a personal Chapter 11 bankruptcy case for a retired, married couple that owned a home, rental property, and vacant land. I reduced the Debtor's secured debt on their home by $255,000.00 by successfully bringing a Motion for Order to Value Collateral and Avoid Security Interest. Debtors kept all of their property. The vacant land was re-purposed to produce agricultural income.

cccc. On June 29, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Shahin Melamed, Case No # 1:10-bk-23818-GM. This case was filed on October 31, 2010. The plan confirmed was the original plan that we proposed, with no amendments needed. This was a personal Chapter 11 for an individual Debtor. The Debtor was in bankruptcy for 16 months before he hired me. During that time, there was little or no progress on his case. After the Debtor hired me, I reduced his secured debt by $568,000.00 as the result of a half day evidentiary hearing before Judge Mund, and, in less than four months, I confirmed a plan of reorganization for him that resolved all of his problems and let him keep his home and all of his rental properties.

dddd. On June 29, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Leonor C Zimerman, Case No.: 1:11-bk-14045-GM. This case was filed on April 1, 2011. The plan confirmed was Debtor's second amended plan. This case involved the successful reorganization of the loans on the Debtor's primary residence and her rental property. I was also able to successfully value the residence in order to strip off the secured second lien in the amount of $184,826.43 and make that loan fully unsecured.

eeee. On June 13, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Vahigh and Penah Dadayan, Case No.: 2-11-bk-16452-RK. This case was filed on February 15, 2011. The plan confirmed by the Debtors was a second amended plan. This was a personal Chapter 11 for a couple that wanted to keep their home and 5 rental properties. I successfully brought multiple valuation motions and reduced the secured debt on Debtors' rental properties. My clients restructured their debts and kept ALL of their properties.

Case: 26-30265    Doc# 52    Filed: 05/14/26    Entered: 05/14/26 20:23:58    Page 57 of 61

ffff. On May 23, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Hamid Peter Keshavarz and Farideh Keshavarz, Case No.: 1-11-bk-17414-AA. This case was filed on June 16, 2011. The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the successful reorganization of the loans on the Debtors' primary residence. I prepared and won a Motion for Order to Value Collateral with regards to the Debtors' home, successfully stripping off the second and third liens on the home. By doing this, I changed a combined $258,063.00 in debt from secured debt to unsecured debt. The plan that I confirmed settles all of the Debtors' unsecured debt by paying out less than one penny on the dollar to Debtors' unsecured creditors over 5 years.

gggg. On April 11, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Gregory Stephen Jones, Jr. and Eteva Desiree Laufasa, Case No.: 2:11-bk-22829-PC. This case was filed on March 25, 2011. The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the successful reorganization of the loans on the Debtors' primary residence and both of their rental properties. I was able to successfully value the residence in order to strip off the secured second lien in the amount of approximately $221,000.00 and make that fully unsecured. I was also able to successfully value one of the rental properties in order to strip off approximately $156,000.00 and make that completely unsecured. On the second rental property, I was able to value the property in order to settle the second lien in approximate amount of $133,000.00 and strip it off for only $5,000.00.

hhhh. On February 27, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re 7 West, LLC, Case #2:10-bk-36804-ER. The case was filed on June 30, 2010.The plan that Debtor confirmed was its second amended plan. This case involved the successful reorganization of a 24-unit apartment complex in Los Angeles, California.

iiii. On February 3, 2012, I confirmed a plan of reorganization in a Chapter 11 Case entitled In re Moshe Segev and Michelle M. Cohen, Case # 1:09-bk-23222-GM. This case was filed on October 7, 2009. The plan that Debtors confirmed was their third amended plan. This was a personal Chapter 11 for a couple with 4 children under the age of 9. I successfully brought

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

multiple valuation motions and reduced the secured debt on Debtors' investment properties. My clients restructured their debts and kept 4 out of 6 properties.

jjjj.    On September 30, 2011, I confirmed a plan of reorganization in a Chapter 11 Case entitled <u>In re Ludo Gust Mensch and Lorraine Patricia Mensch</u>, Case No.: 1:10-bk-22102-MT. This case was filed on September 24, 2010. The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the successful reorganization of a construction company and two pieces of real property.

kkkk.   On July 18, 2011, I confirmed a plan of reorganization in a Chapter 11 case entitled <u>In re Rahim Zabihi</u>, Case No. 8-10-bk-11504-TA. This case was filed on February 5, 2010. The plan confirmed was the original plan that we proposed, with no amendments needed. That case involved the successful reorganization of two veterinarian clinics and five pieces of real property.

llll.    On July 7, 2011, I confirmed a plan of reorganization in a Chapter 11 case entitled <u>In re Twelve Signs Incorporated</u>, Case No. 2:10-bk-11758-PC. This case was filed on January 18, 2010. The plan confirmed was the original plan that we proposed, with no amendments needed. This case involved the liquidation of various intellectual property of an astrological products company, including the magazine "Star Scroll."

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on May 14, 2026 at Beverly Hills, California.

_____
Michael Jay Berger

DEBTOR ACADEMY OF VOLLEYBALL, INC AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

# DECLARATION OF DANIELE DESIDERIO

I, Daniele Desiderio, declare and state as follows:

1. I am the Owner/CEO of Academy of Volleyball, Inc., the Debtor and Debtor-in-Possession (the "Debtor"). I am over the age of 18. I have personal knowledge of the facts I state below, and if I were to be called as a witness, I could and would competently testify about what I have written in this declaration.

2. I make this declaration in support of Debtor's Application for Order Authorizing Debtor to Employ General Bankruptcy Counsel ("Application to Employ") |docket no. 32], and in response to the Court's Tentative Ruling Denying the Application to Employ and Setting Hearing ("Tentative Ruling") [docket no. 47].

3. The problems at the beginning of this case were caused in part by the emergency nature of this Chapter 11 filing. Debtor hired Applicant on March 24, 2026 and filed Chapter 11 on March 26, 2026 to stop an eviction, and to stop liens from aggressive merchant cash advance ("MCA") lenders. At the time of filing, the Debtor had not yet gathered and provided to counsel all of the information needed for the filing of first day motions. This is what led to the 6-day delay between the filing of the Debtor's Chapter 11 Petition on March 26, 2026, and the filing of the Debtor's Cash Collateral Motion and Payroll Motion on April 1, 2026.

4. I still want the Court to approve the Employment Application and to hire Applicant as Debtor's general bankruptcy counsel. I testified under oath to my preference at the meeting of creditors after reading the Court's Tentative Ruling, and I confirmed my preference in telephone conversations with Applicant.

DEBTOR ACADEMY OF VOLLEYBALL, INC. AND PROPOSED COUNSEL LAW OFFICES OF MICHAEL JAY BERGER'S RESPONSE TO COURT'S TENTATIVE RULING DENYING APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY GENERAL BANKRUPTCY COUNSEL AND SETTING HEARING; DECLARATIONS OF MICHAEL JAY BERGER AND DANIELE DESIDERIO IN SUPPORT THEREOF

5. I have discussed the Tentative Ruling with Applicant to understand its meaning and its implications for the Debtor's bankruptcy case. The Debtor understands the reasoning of the Court, and still requests that it be allowed to retain Applicant as General Bankruptcy Counsel. Debtor believes that Applicant is the right fit for Debtor's needs in prosecuting its Chapter 11 bankruptcy. Debtor has faith that Applicant will represent the Debtor with competence and zeal, and that Applicant has the best chance of assisting the Debtor emerge as a reorganized Debtor.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on May 14, 2026 at Redwood City, California.

_____
Daniele Desiderio

Case: 26-30265   Doc# 52   Filed: 05/14/26   Entered: 05/14/26 20:23:58   Page 61 of 61